IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOBBY K. WILLIAMSON,  :<br>    Plaintiff                     : <br>                                     : <br>        v.                              : <br>                                     : <br>PENNSYLVANIA DEPARTMENT  : <br>OF CORRECTIONS, et al.,  : <br>    Defendants           : | No. 1:22-cv-01965<br><br>(Judge Kane) |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 in which pro se Plaintiff Bobby K. Williamson alleges violations of his civil rights arising from an incident in which one of the Defendants allegedly peered at him while he was using the bathroom. Presently before the Court is Defendants' motion to dismiss Williamson's complaint. (Doc. No. 14.) For the following reasons, the motion to dismiss will be granted.

**I.     BACKGROUND**

Williamson filed the complaint that initiated this case on December 13, 2022. (Doc. No. 1.) According to the allegations in the complaint, Williamson, an inmate in Huntingdon State Correctional Institution ("SCI-Huntingdon"), was employed in the prison's kitchen on April 4, 2022, when he was taking a break from his shift to use the bathroom. (Id. at 13.) While he was using the bathroom, Defendant Bolton, a food services supervisor, allegedly "peer[ed]" in at Williamson. (Id.) Williamson immediately told Bolton that he was using the toilet, and Bolton allegedly responded, "okay, okay," and left the room. (Id.)

When Williamson finished using the bathroom, he attempted to report Bolton's conduct to Defendant Beck, another food services supervisor in the prison. (Id.) Beck allegedly refused to listen to Williamson because she was eating a meal. (Id.) Beck then purportedly declined to

"follow up" with Williamson after finishing her meal to find out what he was trying to report. (Id.)

Later that day, Williamson allegedly reported Bolton's conduct to Defendant Grassmyer, a lieutenant in the prison, while Grassmyer was making rounds outside of Williamson's cell. (Id.) Williamson purportedly gave Grassmyer a form that he had prepared to file a complaint pursuant to the Prison Rape Elimination Act ("PREA"). (Id.) The PREA complaint was directed to Defendant Ralston, Williamson's unit manager, and Defendant Strong, the prison's PREA lieutenant. (Id.) The complaint alleges that Grassmyer was required to commence and file the PREA complaint on Williamson's behalf in accordance with Pennsylvania Department of Corrections ("DOC") policy. (Id.) Williamson additionally placed a PREA complaint in the institutional mail addressed to Ralston and Strong. (Id. at 13–14.)

On April 18, 2022, Williamson wrote a letter to Defendant Radziewicz, SCI-Huntingdon's PREA coordinator, to inquire why there had been an "inordinate delay" in filing the PREA complaint. (Id. at 14.) Sometime between April 29, 2022, and May 3, 2022, Radziewicz acknowledged receipt of the letter and informed Williamson that the matter had been assigned a PREA complaint number and that Williamson would be interviewed by PREA investigators at some point. (Id.)

On May 4, 2022, Williamson was interviewed by Defendant Strong and Defendant Strait, SCI-Huntingdon's PREA compliance manager. (Id.) Williamson was asked to provide a written account of the incident involving Bolton, but Williamson declined. (Id.) The interview purportedly concluded with no further questioning by Strong and Strait. (Id.)

The complaint alleges that shortly after the incident involving Bolton, on April 9, 2022, Williamson was working in the prison's kitchen when Defendant Beck approached him and

asked him what task he had been assigned. (Id.) Williamson responded that no supervisor had assigned him a task. (Id.) Beck then allegedly told another inmate to "take a break," and told Williamson to "[g]et on the line and work." (Id.) Williamson filed a grievance against Beck, alleging that her actions were retaliation for his complaint against Bolton. (Id. at 14–15.) The grievance was denied, based on a supposed witness account from Everhart, another staff member in the kitchen, who purportedly stated that Williamson's account of retaliation by Beck was untrue. (Id.) Sometime in May 2022, Williamson saw Everhart and asked him about the incident. (Id. at 15.) Everhart allegedly responded that he had no knowledge of the incident on April 9, 2022, and had not been interviewed in connection with the incident. (Id.) Williamson purportedly spoke with Everhart again in September 2022, at which point Everhart allegedly stated that Defendant Pittsinger, the individual responsible for investigating the retaliation claim, was "using him as a scape goat because he knows that he's leaving soon." (Id. at 15–16.) Williamson appealed Pittsinger's denial of his grievance against Beck, but the appeals were denied. (Id. at 16.)

Sometime between April and June of 2022, Williamson was hired for a different prison job as a janitor for the rear of the kitchen. (Id.) On June 3, 2022, Beck purportedly ordered Williamson to clean plastic meal trays that had just been returned to the kitchen. (Id.) Thirty inmates who were ordinarily responsible for cleaning the trays were allegedly observing this incident but were not ordered to perform the task. (Id.) Beck spoke with Williamson's supervisor during this incident, who reminded her what Williamson's job duties were, but Beck purportedly responded, "he can still help with banging out and cleaning the trays." (Id. (emphasis omitted).) Williamson's supervisor told him that he did not have to do the trays. (Id.) Williamson filed a second grievance against Beck over this incident. (Id.) The grievance was

again assigned to Pittsinger, who ruled against Williamson and concluded that Williamson should have followed Beck's orders to clean the trays. (Id. at 17.) Williamson appealed, but his appeals were denied. (Id.) The complaint asserts that in the ninety days following the initial incident with Defendant Bolton, SCI-Huntingdon and its officials took no actions to protect Williamson from retaliation by Beck or other individuals. (Id.)

The complaint alleges in conclusory fashion that the DOC and several supervisory Defendants maintain various policies that adversely affect inmates who file PREA complaints, including: (1) allowing employees to retaliate against inmates for firing PREA complaints; (2) not properly investigating PREA complaints; (3) filing and approving misconduct charges against inmates who have filed PREA complaints; (4) wrongfully convicting inmates who have filed PREA complaints of misconduct; (5) encouraging witnesses to testify falsely against inmates who have filed PREA complaints; (6) not filing reports of PREA complaints; (7) not separating inmates who file PREA complaints from their alleged abusers; and (8) not disciplining staff members who violate PREA. See (id. at 17–19).

The complaint alleges that Defendants carried out these policies in their handling of Williamson's PREA complaint. See (id. at 21). SCI-Huntingdon staff members who were responsible for investigating the PREA complaint purportedly accepted the account of a John Doe inmate who witnessed the interaction between Williamson and Bolton and said that he had not seen Bolton do or say anything inappropriate. (Id.) The complaint alleges that the inmate's account was "false" because video evidence—which Defendants purportedly suppressed—allegedly showed the inmate in a physical space where he could not possibly see Bolton. (Id.) The complaint alleges that Defendants used this false testimony from the inmate to charge Williamson with lying to an employee about the incident in question. (Id. at 21–22.)

4

The complaint asserts the following claims for relief: (1) a retaliatory misconduct claim against Defendants Radziewicz, Strait, Strong, Grassmyer, Wendle, Ellenberger, and Rivello; (2) a procedural due process claim against Defendants Strait, Strong, Ellenberger, Rivello, Grassmyer, Radziewicz, and the DOC; (3) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 against all individual Defendants named in the complaint; (4) failure to intervene against all individual Defendants; (5) supervisory liability against Defendants Radziewicz, Strait, Pittsinger, Rivello, and Wendle; (6) "state agency liability" against the DOC; (7) violation of Williamson's right to privacy against Defendant Bolton; and (8) retaliation against Defendant Beck. (Id. at 24–34.) The complaint names as Defendants the DOC, Rivello, Pittsinger, Everhart, Beck, Bolton, John Doe, Radziewicz, Grassmyer, Strong, Ralston, Wendle, Strait, Ellenberger, and the "Bureau of Investigative Intelligence" ("BII"), which is identified as a subordinate branch of the DOC. (Id. at 1–2.) Williamson seeks compensatory and punitive damages. (Id. at 35.)

All Defendants other than John Doe ("DOC Defendants") moved to dismiss the complaint on March 13, 2023. (Doc. No. 14.) Briefing on the motion is complete and the motion is ripe for judicial resolution. (Doc. Nos. 15, 26.)

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

5

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).

The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  An undisputedly authentic document attached as an exhibit to a motion to dismiss by a defendant may be the basis to grant the motion to dismiss if the contents of the document contradict the plaintiff's allegations.  See Pension Benefit Guar. Corp., 998 F.2d at 1196 (noting that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" because "otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III. DISCUSSION

DOC Defendants seek dismissal of all of Williamson's claims for failure to state a claim upon which relief may be granted.  The Court will analyze DOC Defendants' arguments for dismissal seriatim.

#### A. Retaliation

DOC Defendants' first argument is that Williamson's retaliatory misconduct claim and retaliation claim against Beck fail because Williamson has not alleged a causal connection between his protected conduct and Defendants' allegedly retaliatory actions and because Beck's actions do not constitute sufficiently adverse actions to support a retaliation claim.

To state a retaliation claim upon which relief may be granted, a plaintiff must allege (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  When a plaintiff asserts a claim of retaliation based on defendants bringing allegedly retaliatory misconduct charges against the

plaintiff, the claim fails if there was "some evidence" to support the underlying misconduct charge.  See, e.g., Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (unpublished) (holding that retaliatory misconduct claim fails when there is some evidence to support the misconduct charge); Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (holding that retaliatory misconduct charge failed because there was a quantum of evidence indicating that prisoner plaintiff committed underlying misconduct, and the decision to sanction him for misconduct was therefore based on a legitimate penological interest).

      The Court will dismiss Williamson's retaliatory misconduct claim because the allegations of the complaint make clear that there was some evidence to support the underlying misconduct charge.  According to the complaint, Williamson asserted that Bolton "peered" at him while he was using the bathroom, but Bolton denied any wrongdoing and another inmate testified that he witnessed the incident and that Bolton had not done or said anything inappropriate.  See (Doc. No. 1 at 13, 21–22).  The accounts of Bolton and the other inmate represent "some evidence" to support the charge that Williamson lied to a staff member when he asserted that Bolton "peered" at him while he was using the bathroom.  See Nifas, 374 F. App'x at 244; Carter, 292 F.3d at 159; see also Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455–56 (1985) (holding that "some evidence" standard in prison disciplinary proceedings "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board").

      The Court will also dismiss Williamson's retaliation claim against Defendant Beck.  Beck's alleged actions of ordering Williamson to serve food on one occasion and clean out food trays on another occasion are simply not serious enough to deter a person of ordinary firmness

from exercising his constitutional rights. Williamson was employed in the kitchen at all relevant times, and it appears from the complaint that these tasks were a very minor deviation from his normal job duties. These de minimis changes to the conditions of his employment are not sufficient to support a retaliation claim upon which relief may be granted. Accordingly, the Court will dismiss Williamson's retaliation claims for failure to state a claim upon which relief may be granted.

### B. Due Process

DOC Defendants next argue that Williamson's complaint fails to state a due process claim upon which relief may be granted based on the misconduct proceedings arising from the charge that he lied to an employee because the sanctions imposed on Williamson for the misconduct—thirty days of cell restriction and the loss of his prison job—do not trigger due process protections. (Doc. No. 15 at 8.)

The Court agrees. Restrictions or conditions imposed on a prisoner only trigger procedural due process protections when they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). Neither of the conditions imposed on Williamson in this case trigger due process protections under this standard. See, e.g., Stewart v. Varano, 601 F. App'x 107, 110 (3d Cir. 2015) (unpublished) (holding that "thirty days of cell restriction" does not impose atypical and significant hardship triggering due process protections under Sandin); Armstrong v. Brooks, 283 F. App'x 906, 909–10 (3d Cir. 2008) (unpublished) (same); Walker v. Mathis, 665 F. App'x 140, 143 (3d Cir. 2016) (unpublished) (holding that prisoners do not have liberty interest in prison job triggering due process protections under Sandin); Iwanicki v. Pa. Dep't of Corrs., 582 F. App'x 75, 81 (3d Cir. 2014) (unpublished) (same). Accordingly, Williamson's due process

claim will be dismissed for failure to state a claim upon which relief may be granted because he has not alleged that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 484.

    C.    **Conspiracy**

The Court will next consider Williamson's claim that Defendants conspired to violate his right to equal protection pursuant to 42 U.S.C. § 1985(3), which allows a civil claim "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  To state a claim for conspiracy under Section 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." See Davis v. Wigen, 82 F.4th 204, 214 (3d Cir. 2023) (quoting United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828–29 (1983)).  "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." Scott, 463 U.S. at 835 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

DOC Defendants argue that the conspiracy claim should be dismissed because Williamson has not alleged that the purported conspiracy was based on his membership in a class or animus towards that class. (Doc. No. 15 at 9–10.)  Williamson argues that Defendants

engaged in a conspiracy to violate his right to equal protection based on his race and his age. (Doc. No. 26 at 30–31.)

Neither the Supreme Court nor the Third Circuit has held that conspiracy claims pursuant to Section 1985(3) may be brought based on the plaintiff's age, but several district courts in this circuit, including one court in this district, have held that age is not a proper basis for a conspiracy claim under Section 1985(3).  See Bolus v. Pa. Office of Att'y Gen., No. 3:13-cv-01460, 2014 WL 131635, at *4–5 (M.D. Pa. Jan. 13, 2014) (Mariani, J.); McCleester v. Mackel, No. 06-cv-00120, 2008 WL 821531, at *30–31 (W.D. Pa. Mar. 27, 2008); Platt v. Burroughs Corp., 424 F. Supp. 1329, 1340–41 (E.D. Pa. 1976).  The Court need not decide whether age is a protected class that gives rise to a Section 1985(3) conspiracy claim, however, because Williamson has not alleged any facts to show that the purported conspiracy by Defendants was based on Williamson's race, age, or any other class-based reason.  See (Doc. No. 1); Scott, 463 U.S. at 835.  Accordingly, the Court will dismiss the conspiracy claim for failure to state a claim upon which relief may be granted.

### D. Claims Against DOC and BII

The Court will dismiss Williamson's claims asserted against Defendants DOC and BII because, as Defendants correctly note, see (Doc. No. 15 at 13–14), neither entity is a "person" that may be sued pursuant to 42 U.S.C. § 1983.  See Curtis v. Everette, 489 F.2d 516, 521 (3d Cir. 1973); accord Pettaway v. SCI Albion, 487 F. App'x 766 (3d Cir. 2012) (unpublished).

### E. Right to Privacy

Defendants argue that Williamson's invasion of privacy claim against Defendant Bolton should be dismissed.  (Doc. No. 16 at 14–16.)  The Court agrees.  Although the basis of Williamson's right to privacy claim is not clearly specified, the Court liberally construes the

claim as asserting that Bolton's actions in "peering" at him while he was using the bathroom represented an unreasonable search that violated the Fourth Amendment.  "The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."  Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) (citing Hudson v. Palmer, 468 U.S. 517, 529 (1984)).  Thus, Williamson's right to privacy claim is subject to dismissal to the extent that it is based on his right to privacy under the Fourth Amendment, and the Court cannot discern any other basis for the invasion of privacy claim to proceed.  The claim will therefore be dismissed.

### F. Claims Against John Doe Defendant

The Court will additionally dismiss all claims against the John Doe inmate who purportedly testified against Williamson because the inmate was not acting under color of state law.[1]  See Harvey, 421 F.3d at 189 (noting that Section 1983 civil rights claims may only be asserted against individuals who are acting under color of state law); see also, e.g., Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) (unpublished) (concluding that fellow inmate who allegedly assaulted plaintiff was not state actor).

### G. Failure to Intervene and Supervisory Liability

Finally, the Court will dismiss Williamson's failure to intervene and supervisory liability claims.  Both claims are predicated on the theory that Defendants failed to stop or prevent other Defendants from violating Williamson's civil rights.  See (Doc. No. 1 at 29–31).  As detailed above, however, Williamson's complaint fails to state a claim for any underlying violations of

---

[1] Although John Doe has not been served with process and has not responded to the complaint, dismissal of the claims against him is appropriate pursuant to the screening provisions of 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.

13

his civil rights. It follows that his failure to intervene and supervisory liability claims also fail to state a claim upon which relief may be granted.

### H.     Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. Based on the foregoing, the Court finds that leave to amend would be futile with respect to Williamson's due process claim and his claims against the DOC, the BII, and John Doe because those claims fail as a matter of law. Leave to amend will be granted in all other respects, however, because the Court cannot conclude that leave to amend would be inequitable nor futile.

IV.     CONCLUSION

For the foregoing reasons, the Court will grant DOC Defendants' motion to dismiss, dismiss Williamson's due process claim and claims against the DOC, the BII, and John Doe without further leave to amend, dismiss Williamson's complaint without prejudice in all other respects, and grant Williamson leave to file an amended complaint.  An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania