# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Bobby Kenneth Williamson,

               *Plaintiff*

    Vs.

Brian Bolton,

Beverlyn Beck,

Charles Pittssinger,

 Shane  Grasmyer

Timothy Strait,

Kelsey Strong,

Daniel Wendle

Scott Ellenberger

John Rivello,

          *Defendants*

**Civil Action Number 1:22-cv-1965**

(Judge Yvette Kane)

FILED
HARRISBURG, PA

MAY 14 2024

PER ___*IBL*___
DEPUTY CLERK

## Amended Complaint

I. Jurisdiction And Venue

1. Plaintiff is seeking relief for violation of rights protected under the Eighth Amendment to the United State Constitution, as incorporated by the Fourteenth Amendment.

2. This ourt has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1343(a)(3) and (4) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3.   Venue is proper pursuant to 28 U.S.C. §1391(b)(2), because events giving rise to this action occurred within the Middle District.

Ref: 5163439 Pg 3 of 66 for BOBBY WILLIAMSON

II. Plaintiff

II. Addresses and Information

### A. PLAINTIFF

4. Plaintiff Mr. Bobby Kenneth Williamson, DQ-9200, is an adult individual who is current incarcerated at State Correction Institution at Huntingdon, located at 110 Pike Street, Huntingdon Pa. 16652, serving a life without parole sentence.

### B. DEFENDANTS

5. Brian Bolton, Correctional Food Service Supervisor, is an adult individual who at relevant times was acting outside of the course and scope of his employment,

6. Brian Bolton, an adult individual who at all times was employed as a Food Service Suprvisor to provide food services duties. At all times, Defendant Bolton was acting under the color of state law and within the course and scope of his employment as food service employee at SHI Huntingdon.

7. Food Service Supervisor, Beverlyn Beck, Correctional Food Service Supervisor, is an adult individual who is at all times was acting outside of the course of her employment at SCI Huntingdon.

8. Beverlyn Beck, Correctional Food Service Supervisor, who is at all times was employd as a Food Service Supervisor to provide food services duties. At all times, Defendant Beck was acting under the color of state law and within the course and scope of her employment as food service employee at SCI Huntingdon.

9. Shane Grassmyer, is an adult individual who at all times was employed at SCI-Huntingdon, as a facility security Lt. At all times, Lt. Shane Grasmyer was acting under the color of state law and within the course and scope of his duty.

10. Correctional Food Service Manager Charless Pittsinger, is an adult individual who at all times was acting under the color of state law and within the course of his duty, at SCI-Huntingdon.

11. Timothy Strait, is an adult individual who at all times was employed at SCI, Huntingdon as a Correctional Program Manager (PREA Staff Investigator). At relevant times Timothy Strait was acting under the color of state law and within the course and scope of his duty.

12. At relevant times, and relevant to this matter, Timothy Strait, acted outside of the scope of his duty, as a PREA Staff.

13. Lieutenant Kelsey Strong Corrections Classification Program (PREA Staff Investigator), is an adult individual who is at relevant times was employed at SCI Huntingdon. At relevant times PREA Staff Strong was acting outside of the scope of her duty.

14. Captain Danial Wendle, is an adult individual who is at all times was empoyed at SCI Huntingdon, as a Shift Commander. Captain Wendle at all times acting under the color of

state law ans within the course of the scope of his duty,

15. Scott Ellenberge, Misconduct hearing Examiner is an adult indivual who at all times was employed at SCI Huntingdon. At all times Hearing Examiner Ellenberger was acting under the co,lor of state law and with the sope of his emplyment and within the course and scope of his duty.

16. John Rivello, is the Superintendent of SCI Huntingdon, is an adult individual, his responsibilities covers the entire opperation of the faciity. At all times he was acting under the color of state law and within the course of his duty.

III. STATEMENT OF FACTS

1. On April 4th, 2022, plaintiff was working in the facility's kitchen Inmates Dinning Hall, assigned as a Janitor.

2. On April 4th, 2022, at about 10am. plaintiff went to the inmate toilet, at the rear of the kitchen, to use the urinal.

3. the urinal is locate at the rear of the kitche,which narrows in a passage that leads to the outside.

4. This passage way is approximately 3 and one half feet wide and about 22 feet long.

5. entering the passage way from the interior of the kitchen, immediately above the arch, located in the upper corner is a **PREA MONITORING CAMERA**.

6. Inside of the passage way area there are five rooms in the following order :

(a) On the right hand side there is a small doorles room with a sink,

(b) Then there's a room with a transparent door, a portion of which is tinted at about 36 inches, or in accordance with PREA Standards. and at the very back of theis room, affixed a URINAL on the back wall, located at the left corner.

(c) And then there are two separate rooms, i.e., with toilets fixturres.

7. On the left hand side of this same passage way, there is a large wash room, i..e., without a door, which is at the end of the passage way.

8. Inside this Wash Room there is a PREA MONITORING CAMERA on the upperback wall, which is positioned to capturer the activities wihin the interiiro of this Wash Room and its entrance.

9. Both Pots and Pans washers and Janitors who are assigned to the rear of the kitchen uses the wash room area to wash pots, pans, trach bins and mops / buckets using the pressure hose located inside the wash room.

10. An so, on April 4th,2022, because of my medical condition, caused after my birth, whenever I'm urinating, in order to urinate I have lower both my uder shorts and outer pant, mid-thigh., that is to prevent spillage on my clothes.

11. While is this state of performinng that bodily functionn, plaintiff sensed that someone was watching and when plaintiff looked to see if there was anyone ther, plaintiff saw defendantn Bolton standing there peering into the Urinal at plaintiff urinting.

12. Plaintiff comfronted defendant Bolton "hey man can't you see that I am urinating," or

Ref: 5163439 pg 5 of 66 for BOBBY WILLIAMSON

something to that effect, and Bolton response was to throw his hands up and said, " Okay, Okay." and then Bolton walked away.

13. I felt humiliated to the point where as the oly thing plaintiff could think of was to walk to the door of the stall, in disbelief of what had occured, and to see if anyone else was in the area . Captured on CCTV footage.

14. No one was to my left that I could see, however I call out, if there was anyone there, and no one answered but when i looked to my rigt and accross into the Wash Room, the one person I saw was an inmate I know by thename of "Haywood Baraber, aka June-Bug," who is the kitchen Janitor, washing out either a mop bucket and or trash bin - We made eye-contact. Captured on CCTV footage.

15. When Plaintiff observed inmate barber he was not at the entrance of the wash room, nor was he inside of the passage way. Captured on CCTV footage.

16. Plaintiff left the door of the stall and went back to finishing relieving myself

17. When plaintiff emmerged from the urinal stall, plaintiff immediately went to defendant Beck, to report what defendant Bolton had just did but defedant beck told plaintiff that she was busy eating. Defendant Beck at that point defendat was seated at an advantage point where she was able to see directly into the passage way, that is, without obstruction, and saw defendant Bolton in the passage way, facing the urinal. Captured on CCTV footage.

18. Despite the disturbane of plaintiff's mental peace and the reoccuring images of defendant Bolton's sexual abuse, plaintiff manage to complete plaintiff's shift, working in the kitchen, through 5:30pm.

19. At about -7pm, Security Lt. Grassmyer was doing a tour of B-Unit and plaintff stopped him while he was outside of plaintiff's cell, #240 and informed him what defendant Bolton did.

20/ At that point plaintiff already had about 3 separate DC-135A, Request to Staff Member, singed, with a sworn Statement, pursuant to 18 P.S> §4907, evidencing a PREA Complaint, and Plintiff offered Grassmyer to read the one direct to defendant Lt. Strong.

21. Lt. Grassmyer can be observed outside of plaintiff's cell @ B-Unit on April 4th, 2022,, at relevant time reading that request slip. and then returning said complaint to plaintiff on the otherside of the cell door..

22. When Lt. Grassmyer returned plaintiff's PREA Complainnt, he advised plaintiff to send the complaint to defendant Lt. Strong's office 'because thats who deals with sexual abuse complaints."

23. Defendant Grassmyer had a duty to report plaintiff's sexual abuse complaint to the Shift Commander, before his shift ended.

24. Defendant Grassmyer had a duty to separate plaintiff and defendant Bolton.

25. On Aprill 5th, 2022, plaintiff went back to work in the kitchen with defendant Bolton for the ensuing four months, i.e., until about August 10th, 2022.

26. On Aprill 4th, 2022, plaintiff placed a DC-135A Inmate Request to Staff Members, i.e., to PREA Lt. Strong,' ontaining a PREA Complaint, inside of the facility's mailbox.

27. Also, on April 4th/5th,, 2022, plaintiff did mail a DC-135A, Inmate Request to Staff

Member, i.e., to then B-Unit Unit manage, Mr. George Raston, not a defendant in this lawsuit, a PRE Complaint, inside of facility's mailbox.

28. On April 6th, 2022, Mr. george Ralston respondeed to plaintiff, "Copy scanned to PREA Lt. Strong for review, signed G. Ralston." See Exhibit A.

29. PREA Lt. Strong did not file the PREA Complaint she received through the facility's Intra-Net System, sent to her by Mr. Ralston on April 6th, 2022.

30. PREA Lt. Strong did not file the PREA Complaint plaintiff mailed her on April 4th, 2022.

31. PREA Lt. Defendant strong failed to separate plaintiff and defendant Bolton.

32. Plaintiff was forced to work in a tensed work environment, which further aggravated plaintff's mental peace.

33. On April 9th, 2022, defendan Beck order Inmate Skukes (sic) off of the assembly-lunch line, while in progress while inmates were already assinged to prepared the lunch trays, telling inmate Skukes (sic), " to take a break for the day,

34. And then Defedant Beck shouted at plaintiff, "WILLIANSON GET ON THE LINE AND WORK." !!!

35. All the inmates who were working on the line at that time witnessed and heard what defendant Beck said to plaintiff, although one is able to hear what defendant beck said at that moment, however, the inmates reaction can be ascertain from the CCTV's footage, where a chorus of "Wowwww,' is being mouth by those inmates.

36. Plaintiff filed a timely grievance claiming retaliation by defendant Beck and have exhausted all three tier.

37. On or about the last week of April 2022 plaintiif wrote the Bureau of Investigative Intelligence, at there office, asking for their intervention due to an inordinate delay thefacility's PREA Staff in filing the April 4th, 2022, PREA Complaint.

38, In the BII response to plaintff's concerns, they assured plaintiff that PREA Staff at the facility had not docket a PREA Complaint at that time and thattheir office had informed PREA staff of my concern, and should be scheduling an interview with plaintiff.

39. Plaintiff sent Timothy Strait a Copy of said DC-135A, PREA Complaint, at of about late April 2022.

40. On or about May 4th, 2022, Plaintif was interviewed by PREA Lt. Strong and Strait.

41. During the May 4th, 2022, interview with defendants Strong and Strait., Lt. Strong said that she did not received April Complaint, which Mr. Ralston and Plaintiff mail to her office. until recently, i.e., when plaintiff mailed defendant Strait a copy."

42.. On June 23r, 2022, defendant Beck knew that plaintiff's new assignment in the kitchen consisted of plaintiff coming to work a a janitor between the morning shift and the afternon/evening shifts and clean up the intrior of the kitchen area, before the second shift arrives at about 1pm.

43. Upon enter the inmate dinning hall on June 23rd, 2022, at about 12pm, defendat Beck was sitting with coworkers and inmates socializing.

44. On June 23rd, 2022, in the facility's Inmate Dinning Hall, at approximately 12pm, there were about 30 inmates sitting about 50 feet from defendant Beck, socializinf laying card games and what not...

45. At this point on said sate, plaintiff is now seated at a table next to the aisle, which had food carts laiden with food and other debri, that had returned from the housing units after lunch, long before plaintiif had arrive at work,

46. Defendant Beck told the group of inmates sitting arround that she needed them "to bang out the dirty trays,"meaning remove the food and trash off of the trays.

47. thos inmates then told fendant Beck; "Fuck you bitch," we gonna bang you out bitch ...

48. te entire inmate dinning hall errupted in laughter, including defendant Beck. See CCTV footage.

49. Plaintiff then got up and walked to the plaintiff assigned job site, which was in the rear of the kitchen,

50. Defendant Beck immediately got up and holler at the top of her voice for plaintiff to do the trays in the iesles.

51. When plaintiff got to the rear of the ketchen, plaintiff told the supervisor that, defendant Beck wants to force plaintiff to do extra work, meanwhile the workers assinged to do the trays a re sitting around doing nothing, and just refused to do the trays she now wants plaintiff to do.

52. Plaintiff's supervisor then told plaintiff in the presence of defneant Beck that, "plaintiff did not have to do anyone else's work because plaintiff already been assigned to come in and do janitorial work in the rear of the kitchen .

53. Upon hearing this this defendant beck looked at plaintiff's supervisor and said, 'he can still help to bang out the trays.' Supervisor told beck No plaintiff don't.

54. Plaintiff filed a second grievance complaining of harassment and retaliation by Defendant Beck, and that grievane was initially reviewed by defendant pittsinger, and plaintiff have exhausted administrative remedies.

55. During the 90 PREA Monitoring period, plaintiff informed the designated staff "counselor Mingle" of defendnt Beck conducts of ongoing retaliation and harassments towards plaintiff.

56. on August8th, 2022, PREA defendant strong and Grassmyer issued plaintiff an Inmate Notification 'Investigation Status, UNFOUNDED." "2, Staff update, no action have been taken, against CFSI Bolton at this time

"4 additional comments, the allegation of sexual abuse against CFSI Bolton have been unfounded by CCTV footage at both the local investigatory level and tha of the Bureau of Investigation and intelligenc (BII) .    In accordance with DC-008 Prison Rape Elleimination Act (PREA) procedurues manual, you will be issued a DC-141 Misconduct Report Class 1 Charge #42 Lying to an Employee for presentning false allegation.  If you require victim support Services, these services are confidential and available to you free of charge regaardless of the outcome of the investigation...

57. Defendant Strong does not specifies the date, time and or the place where the CCTV footage she viewed, capture.

58.    Neither defendant Strong nor any other defendant at the PREA Local Level or that of the BII, notifiedd plaintiff that an imate who witnessed the incident, did not witness defendant Bolton did or say anything inappropriate, at the time in question.

59. Defendants Strong, Strait, and Grassmyer did not give plaintiff rhe following :

    a.  the testimony / statement of the inmate witness whom PREA Staff iterviewed,

    b.  or that testimony / statement of the defendant Bolton's interview with PREA Staff(s)

    c.  nor did defendant Strong or any other PREA Staff disclosed the name and number of

    that inmate witnesss.

60. On August 8th, 2022, defenedant Strong presented and published a misconduct to defendant Windle, representing that plaintiff lied to an employee on May 4th, 2022.

61. Defendant Strong written report to third party defendant Wendle injured plaintiff reputation in the form of honor, built up over time, through accomplishments and behavior and dignity.

62.   Defendant Wendle reviewed and approved the August 8th, 2022 misconduct, did injured plaintiff reputation, in the form of plaintiff's honor and dignity, etc. '

63.  Defendant Rivello reviewed and made no objection(s) to the August 8th, 2022, isconduct, which is a tacid approval of the Misconduct itsel.

64.   Plaintiff reputation honor and dignity was harmed by defendant Rivello's action and omissions.

65.   Defendant Strong did not view CCTV footage located in the passage way area which monitor the inmate urinal, where defendant Bolton stood on April 4th, 2022 and peered into while plaintiff was using the toilet.

66.   Defendant Strong did not view CCTV footage depicting the interior of where inmate Haywood Barber occupied on April 4th, 2022, when defendant Bolton was standing opposite to the inmate urinal, out of inmate Haywood Barber's view.

67. Defendant Wendle did not view CCTV footage dated April 4th, 2022, of defendant Bolton and or inmate Haywood Barber in the area of and oppsit to the inmate urinal and inside of the

Ref: 5163439 pg 9 of 66 for BOBBY WILLIAMSON

wwash room !

68. Defendant Ellenberger did not accessed whether or not plaintiff initated the May 4th, 2022, PREA Complaint against defendant Bolton by using the grievance System or a DC-135A Request to State Member, slip.

69. Defendant Ellenberger, Rivello Wendle, Strong, Grassmyer and Strait knew that inmates canot utilized the grievance system when filling a PREA Complaint.

70. Defendants Ellenbeger, Strong, Grassmyer, and Strait knew that plaintiff submitted a DC-135A Request to Staff Member Slip, as the instrumental vehicle to complain that, defendant Bolton sexual abused plaintiff on April 4th, 2022.

71. Defendant Ellenberger told plaintiff during the August 10th, 2022, misconduct hearing that he did in fact viewed CCTV footage in question but that even thought he observed Bolton peering into the unmate toilet, he believed that defendant Bolton wasn't engaged in Voyeurism.

72. Defendant Ellenberger told plaintiff that defendant Bolton doesn't have to disclose to plaintiff why h was looking into the inmate toilet while plaintiff was using it.

73. Defendant Ellenberger told plaintiff that defendant Bolton looking at plaintiff in that private moment is no different than if plaintiff was at a Foot Ball Stadium and using the urinal and there's guys next to plaintiff are similar, even where that guy glanced over at plaintiff's autonomy.

74. Plaintiff responded to defendant Ellenberger telling him that his hypothetical is flawed because stadium goers using the public urinal have a reason to be there in that space, which is different from a single urinal stall designated for one occupant at any given time, with the expectation that other s would / will repect and honor your dignity and privacy.

75. Defendant Ellenberger then said, "my hands are tied Williamson, but here's what I'm going to do, I'm not ganna send you to the Restricted Housing Unit (RHU), instead, I'm going to find you guilty, lost of job and 30 days Cell Restriction. Defendant Ellenerger then destroyed what appeared to be a preprepared finding, i.e. before plaintiff even entereed the hearing room on August 10th, 2022."

### a. Before and after plaintiff' filed the PREA Complaint

76. On April 4th, 2022, defendant Beck's vantage point from where she sat on a purch, oversaw the layout of the interior of the kitchen, and a direct unobstructed view to where defendant bolton was captured by CCTV footage peering into the inmate urinal at plaintiff using thetoilet.

76. When plaintiff emerged from the toilet on April 4th, 2022, and went directly to defendant Beck, defendant Beck knew by virtue of the trauma and sensed of emergency was immediately evident and idicating that plaintiff was injured.

77. Defendant Beck did not follow up to see exactly what it was that plaitiff wanted earlier, i.e., when Beck told plaintiff that she was eatingher lunch.

78. Under informmation and belief defenat Beck llearned that plainntiff had filed a PREA Complaint against Defendant Bolton and that plaintiff referrenced Beck being deliberate &

indifferent to plaintiff's concerns and welbeing.

79. Prior to April 9, 2022, when defendant Beck first retaliated against plaintiff plaintiff had no job related issue(s) of being unassigned to a job site, requiring any superviisor and or instructor to assigned plaintiff to a joob, because plainntiff at all times was hired as a Janitor.

80. Defendants Lt. Strong and Strait imposed a standard higher that a "Preponderance of the evidence' in making their determination of whether plaintiff April 4th, 2022, allegation of sexual abuse against defendant Bolton is / was substantiated."

81. Defendants Lt. Strong and Strait did not gather and preserved any available electronic monitoring deta from CCTV footages which :

    a. Captured defendant Bolton outsidethe inmate urinal on April 4th, 2022, while plaintiff occupied the urinal stall,

    b. Captured plaintiff on the inside of the inmate urinal, and at the door,

    c. depicting any inmates in any area, and having the advantage point ot observed defendant Bolton 'stading' outside theinmate urinal on 4/4/22, at the revelant times,

    d. and or confirm that defendant Bollton didno't go anywhere else other than the inmate urinal / toilet where plaintiff occupied, i.e., ***"before or after."***

**b. *State Correctional Instution, @ Huntingdon, Patern and Practice of unconstitutiaonal misconduct in Prison Rape Ellimination Act Investigations (PREA), including***

***but not limitted to the preponderant / some evidence substantiating the vistim's allegation.***

82. Defendants Strait, Long, Wendle, Rivello and Ellenberger are very familiar with DCADM 008 "PREA."

83. Defendants Strait, Long, Wendle, Rivello, and Ellenberger are very familiar with DC-ADM 804, "Inmate Grievance System, whiich state :

    (3) 'A grievance regarding an allegation against a staff member or inmate - on inmate sexual abuse will notbeaddressed through the Inmate Grievance System, and must be addressed through DC-ADM 008, 'PREA."

84. Defendantn Strait, Long, Wendle, Rivello and Ellenberger knew that policy 008 superseded DC-ADM 801, Inmate Discipline.

85. Plaintiff's method of reporting defendant Bolton's sexual abuse on April 4th, 2022, to defendant / PREA Staffs Lt. Strong and Stait, was the submission of a DC-135A, Inmate request to Staff Member.

86. Defendant Lt. Strong in concert with defendant Starait and the BII considered and treated

Ref: 5163439 pg 11 of 66 for BOBBY WILLIAMSON

plainntiff's chosen method of reporting the sexual abuse similar to and as if, that instrument is a traditional Grievance Complaint for the purpose of DC-ADM 804, **_and used to report a sexual abuse._** i.e., in that plaintiff lied to PREA Staffs on May 4th, 2022, for purpose of 28 CFR § 11.52(g) "Exghaustionn of Administrative Remediues."

    c. *Despite evidence sustantiating defendant Bolton standing inside of the passage way,*

      *directly facing the inmate urinal, defendants ignored this inculpatory evidence and*

      *fabricated evidence that an inmate did not see Bolton or heard him say anything inappropriate.*

87. Plaintiff in the April 4th, 2022, PREA Complaint did not alleged that defendant Bolton said anything inappropriate.

89. Inmate Haywood Barber is not a Confidential Informant .

90. Inamte Haywood Barber weren't interviewed by PREA investigators regarding this matter.

91. Inmate Haywood Barber did not voluntarily submitted a written and signed statement regarding this matter.

92. No other inmate was interviewed by PREA Investigators.

93. No inmate gave a signed or unsigned written statement or testified regarding this matter.

94. Noimate was locate within the interior f the kitchen area on 4/4/22, was in close proximity and having a vantage point to physically observed what defendant Bolton was doing inside the narrow passage way area of the inmate urinal .

95. No inmate is captured on CCTV footage on 4/4/22 observing Bolton peering into the inmate tiolet.

96. Neither defendant strong or Strait did not give plaintiff a copy of any inmate statement / testimony PREA Investigators relied upon in support of the their findings that plaintiff's allegation of sexual abuse by Defendant Bolton was Unfounded.

97. *Defendant, Lt. strong and Strait did not or failed to disclose whether or not inmate Haywood* barber was the confidential source who gave them eyewitness informationn that, defendant Bolton did not "say," or do anything inappropriate on 4/4/22 while standing outside of the inmates urinal stall.

98. Defendant, lt.Strong or Strait did nott interview inmate Barber regarding plaintiff's april 4th, 2022, allegation against defendant Bolton.

99. defendant, Lt. Strong or Strait did not interview any inmate regarding plaintiff's allegation of sexual abuse against defendant Bolton.

100. Defendant, lt. Strong or Strait does not have any CCTV footge depicting an inmate observing Defendant Bolton peering into the inmate urinal stall on 4/4/22.

101. Defenatt Bolton stood peering at plaintiff using the inmate toilet for a substaantial time, unrelated to Bolton's job as a foodd service inspector...

102. Defendant Bolton doesn't have a penological interrest in peering into the inmate toilet during plaintiff's occupancy on 4/4/22.

103. PREA Investigators Strong and Strait did disclosed defendant Bolton's written statement, denyinng any wrongdoing.

104. Defendant Strong and trait did not attempt to view the CCTV footage encompassing the passage way area, where the inmates toilet is located and compared what Bolton is captured doing; Bolton's reaction of throwing both hands up to his shoulders after plaintiff caught Bolton in the act of Voyeurism, versus bolton's version(s) of the incident.

105. PREA Investigators, defendant Strong and Strait sid not view and compared the CCTV located inside of the wash room to see if in fact inmate haywood Barberr or any other inmate was at the  wash roomm door enterance and or with the slightest possibility of being able to "see," what defendant bolton was dooing,while Bolton stood outside of the inmate urinal, "peering in at plaintiff."

### d. The PREA Investigator(s) pattern and practie of unconstitutional conducts in Sexual Abuse Investigations, including depriving black inmates of equal protectionn of the law and or privilege under the law.

106. Inmate Mr. Andre Adams #KY4693, is an African Americam male, who filed a PREA Complaint with defendant Strong on or about 2021, against facility staff.

107. PREA Investigator Strong did not separate Mr. Adams and his abuser,

108. At the end of  PREA Investigator strong's four months investigation, defendant Strong concluded that Mr. Adams allegation sexual abuse against staff was unfounded, i.e., based soley on the alleged abusive staff's account of the incident. *See Exhibit B.*

109. Defenant Lt. Strong then issued Mr Adams with a DC-141 misconduct, charging lying to an employee,

110. Defendant Wendle and Rivwllo approved mr. Adams' Misconduct for a Administrative

Ref: 5163439 pg 13 of 66 for BOBBY WILLIAMSON

Hearing.

111. Subsequently, Mr. Adams was found guilty by defendant Ellenberger, and given cell restriction; defendant Ellenberger reached is findingss based on "some evidence that the staff whom Mr. Adams alleged abuse him in the first place, denied the allegation."

112. In bary Freeman # FQ9213, is an African American male, who filed a PREA Complaint against staff member on or a 2021, with defendant Strong office,

113. PREA Investigators defendant, Lt. Strong and Strait did not separate Mr. Freeman and his alleged abuser.

114. After PREA defendants Strong and Strait investigate the matter for four months, they concluded that, the sexual abuse allegation against that staff member was unfounded, i.e., based soley on Mr. freeman's alleged abuser's account of the incident.

115. Defendant Lt. Strong then mmoved to issue Mr. Freeman with a misconduct, charging him with Lying to an Employee.

116. Defendants Wendle and Rivello approve Mr. Freeman's misconduct requiring an Administrative Misconduct Hearing .

117. Subsequently, Mr. Freeman was found guilty by defendant Ellenberger, who found that some evidence exist to support the charge and gave Mr. Freeman Cell Restriction and lost of job.118. Inmate Ramik Beckett, #LN-4378, is also an African American male, who filed a PREA Complaint, on or about 2023, alleging sexual abuse by staff member, docketed @ 2023 P-114.

118. Mr. Rameek Beckett submitted that complaint to defendant Strong, that is, initially in the form of an Inmate Grievance, pursuant to DC-ADM 804, however, it was converted into a PREA Complaint.

*See Exhibit C.*

119. Mr. Beckett's sexual abuse allegation was captured on CCTV footage, near the facility's main thorough way, "Hallway," located infront of the facility's kitchen where Mr. Beckett worked.

120. Upon defendants Strong investigation of the Beckett incidentt, defendant Strong concluded that Mr. Beckett Lied to an Employee and issued Mr. Beckett with a misconduct, docket @ D031990, wherein defendant Strong charged that Mr. Beckett's allegation of sexual abuse was unfounded.

121. Defendant Becketts Misconduct was sceened by both defendants Wendle and Rivello, and subsequetly approved for an Administrative Misconduct Hearing.

Defendant Ellenberger convened a misconduct hearing, during which he found some evidence that Mr. beckett lied against staff member, and gave Mr. Beckett Cell Restriction / or RHU time.

122. On or about January 18th, 2022, Cacausian inmate Frye Richardson made a sexual assault allegation against an African American inmate, whom plaintiff now know to be Mr. Sean

Ref: 5163439 pg 14 of 66 for BOBBY WILLIAMSON

Hawkins #QC-7319, to defendant Strong and Strait.

123. Inmate Richardson was housed on B-Unit, near or at cell 1073.

124. Mr. Hawkins was was housed on B-Unit at cell 1021, that is,on the opposit side of the Unit.

125. All the cells on B-Unit are single cells.

126. There are several CCTV PREA cameras on B-Unit, which captures footages of all angles of the Unit,whereas though there is not area where an inmate can be along with another inmate and or a staff member.

127. B-Unit Cell door have bars but not glass, also, in addition / the facade of the cells on B-Unit consist of bars without plexy-glass.

128. In Summary, inmate Richardson alleged that Mr. Hawkins forced him to come to his cell, from around the other side of the Unit, pass the officers desk at the front of the anddown to his cell, and sexually assaulted him through the door, while he stood on the other side of the door on, the tier.

129. Inmate Richardson then went to the officers desk and gave officer Forston a tissue and said, "here is the evidence, I was sexually assaulted by inmate Hawkins." requiring officer Forston to call defendant Grassmyer at the facility's security department, and at about 1pm, Mr. Hawkins was placed on Administrated Custody, pursuant to DC-ADM 802, docketed @ D64470, See Exhibit D.

130. At some point defendant, Lt. Strong was notified by defendand Grassmyer and Strong secured a formal sexual abuse complaint.

131. In accordance with DC-ADM 802, an administative hearing was held to Mr. Hawkins 'Other Report #D644700, by the Program Review Committee, (PRC).

132. One of the three PRC members, is defendant Strait, who also functions as a PREA Staff Investigator.

133. The PRC decided that Mr. Hawkins be left to languish in administrative custody, and the next PRC was scheduled for 1/26/22.

134. January 26th, came and went without defendant Strong recommended that the PRC release Mr. Hawkins. *See Exhibit E.*

135. On March 16th, 2022, Mr. Hawkins was released back into the general population, that is without defendant Strong and or Straits giving an explanation as to what exactly was their findings and or why it took their office two months to figure out what happen when in fact the inculpatory evidence was obvious from CCTv footage of the time and place of the alleged insident in question.

136 Meanwhile, defendants Strong and Strait failed to issue the Cacausian inmate, 'Frye Richardson (sic) who made the false complaint on January 18th, 2022,, in stead, and although defendants Strong and Strait found that inmate Richardson's allegation was unfounded, he was not issued a misconduct for lying to an Emplloyee, in fact he was rewarded with a desired

transfer to a facility he desired, in lue of his release.

***e. Despite evidence of retaliation by defendant Beck, defendants ignored them and***

***in stead fabricated evidence of an eyewitness account to disscredit plaintiff,***

***or accepted a frabricated account of the incident.***

137. Defendant Pittsinger did the initial revieww of the April 9th, 2022, grievance,where plaintiff alleged retaliation by defedant Beck.

138. defendant Piittsinger called plaintiff to his office for an interview relating to the april 9th, 2022, grievance.

140. When plainntiff arrived at defendant Pittsinger's office, plaintiff noticed a preprepared Innitial Review on defendant Pittsinger's desk, addressing the plaintff's grievance against defenant Beck.

141. The pittsinger told plaintiff that, "he's in full control of the entire facility's food service department and that the food service supervisor and inspectors does whatever he say,

142. Therefore, whatever, job plaintiff wants within the kitchen, Pittsinger would tell them to assign plaintiff, they will comply -\

143. Defendant Pittsinger communicated this offer to plaintiff, in order to resulve the April 9th, 2022, grienvacne against defendant Beck, and gave plaintiff some time to think over that offer.

!44. At some point thereafre, plaintiff declined defendant Pittsinger's offer.

145. Defendant Pittsingerr did not interview inmate Skukes (sic), whom defendant Beck relieved from his duty preparing the lunchtrays and then order plaintiff to get on the line an work.

146. Pittsingerdid not interview any of the many inmate whom witnessed the incident regarding the retaliation by defendant Beck

147. Defendant Pittsinger did not review the CCTV footage of the 4/9/22 incident.

148. Pittsinger said that he interviewed CFSI Cody Everhart, who told him that plaintiff's account of Beck's retaliation on 4/9/22 was untrue.

149. As it relates to the area where the plaintiff alleged that Beck retaliated against plaintiff and the approximate time it happened on 4/9/22, Mr. Everhart isnot captured on CCTV footage in the frame, that is, from a vantage point to be able to witnessed and or heard what transpired in the front of the kitchen at the time in question .

150. In may 2022, plaintiff saw Mr. Everrhart and asked him about the 4/9/22, incident, and Everhart told plaintiff that Pittsinger did not interviewed him about that incident and that he has no knowledge of the incident period.

Ref: 5163439 pg 16 of 66 for BOBBY WILLIAMSON

151.  Mr. Everhart (not a defenant in this lawsuit) told plaintiff that defendant Pittsinger was using him as a scapegoat because Pittsinger knows that he was leaving the kitchen soon, and becoming a Correctional Officer at the facility.

152.  Defendant Wendle knew that defendant Grassmyer, Strait, and Strong refused to file plaintiff's DC-135A Request to Staff Member, "PREA Complaint" against defendant Bolton,dated 4/4/22.

153.  Defendant Rivello knew that defendants Grassmyer, Strait and Strong refused to filed plaintiff's DC-135A PREA Complaint against defendant Bolton, dated 4/4/22.

154.  Defendant Ellenberger knew that defendants Grassmyer, Strait and Strong refused to file plaintiff's DC-135A PREA Complaint against defendant Bolton, dated 4/4/22.

155.  Defeant and Rivello knew accepted PREA Investigators Strait and Strong written report that CCTV footage,  at both the local and BII concluded that the allegtions of sexual abuse against CFSI Bolton have been ***UNFOUNDED***, instead of personally viewing the CCTV footages themselves, before approving the August 8th, 2022, misconduct, issued by defendant, Lt. Strong,charging lying to an Employee, Class 1, #42, i.e., for presenting false allegation.

156.  Defendant Ellenberger told plaintiff on August 10th, 2022, during the misconduct hearing that, he did view the CCTV footages of 4/4/22, relating to plaintiff's allegations against CFSI Bolton, but hthat he did not believe that defendant Bollton actions ware ***Voyeurism*** because he could have been doinng something else. .

157.  Seizing on that point, plaintiff then asked defendant Ellenberger, if he had in fact been given any information by PREA Investigators that, evidence that, defendant Bolton had any job related reason(s) to be peering into the inmate urinal on 4/4/22, while plaintiff was using the inmate urinal, defendant Pittsinger then said,  "Bolton does have to tell you why he's there or owe you any explanation."

158.  Defendant Ellenbeger told plaintiff that, plaintiff is not require to obtain the inmate's eyewitness statement.

159. Defendant Ellenberger accepted Lt. Strong's account, i.e., without seeing a physical copy of the eywitness inmate signed statement and CCTV footage of said inmate eyewitness, in the area where the incident occurred on 4/4/22.

### f.  Tort:  Assault and Battery

### Intentional Infliction of Distress.

160.  Defendant Bolton invaded plaintiff's bodily autonomy by way of Voyeurism.

161.  Defendant Bolton assaulted plaintiff when the defendant intended to cause plaintiff a battery or put plaintiff in apprehension of immenent harmful or the offensive contact.

162.  Defendant Bolton harmful and offensive conduct of ***voyeurism*** breached plaintiff's ***mental peace.***

163.  Plaintiff felt the danger and anticipated  that defendant Bolton was going to physially harm

plaintiff.

## *Damages*

164.  The unlawful, intentional, wilful, deliberate indifferent and reckless acts and omissions of these individual defendants caused plaintiff's invasion of privacy, retaliated against improperly defamed, improperly charged, unfairly charged, wrongfully found guilty, loss of facility job, and forced to served 30 days cell restriction for an infraction plaintiff did not commit.

167.  As a direct result of defendant's comducts and omissions, plaiintif sustained injuries and damages, including loss of plaintiff freedom of movement throughout the facility for 30 days, pain and sufferings, mental peace, honor, reputation, dignity, mental anguish, being distress, and personal humiliation.

168.  As a direct resutl of defendants conduct and omissions, plaintiff sustained ecconomic injuries and damages, loss of income and loss of employment.

169.  As a direct result of defendants' conducts and omissions, plaintiff sustained due process and rights to confront plaintiff's accusers, under the United States Constitution violatations.

170.  As a direct result of defendants conducts and omissions, plaintiff was defamed by the defamatory publications.

171.  As a direct result of dendants conduct and omissions, plaintiff social standing among inmates were noticably diminished.

172.  As a direct result of defendants conducts and omissions, plaintiff ceased to be employable.

173.  As a direct result of defendants conduct and omissions, plaintiff loss friends and honor among peers and otheres.

174.  As a direct result of defendants conducts and omissions, plaintiff was discriminated against base of off plaintiff's race.

Ref: 5163439 pg 18 of 66 for BOBBY WILLIAMSON

## CAUSE OF ACTION

COUNT I : Eighth amendment, State Tort Claims. Against defendant Bolton.

175.  The averment in the preceeding paragraphs are incorporated by referrence as if fully set forth herein :

176.  The actions of defendant Bolton peering into the inmate toilet at plaintiff using the urinal withou penological interest, was done maliciously and deliberately and constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment of the united States Constitution.

177.  The actions of defendant Bolton in peering into the inmate urinal stall - without penological interesst, need or provacation or inducement constituted the tort of assault and battery, or assault under Pensylvania law.

178.    Defendant Bolton acts and omissions as desccribed in the preceeding paragraphs were the direct and proximate cause of plaintiff's injuries.  Defendant bolton knew or should have known, that his conduct would have resulted in plaintiff's mental peace, invasion of privacy and dignity beign violated.

Ref: 5163439 pg 19 of 66 for BOBBY WILLIAMSON

COUNT II : 42 U.S.C.  §1985(3) Civil Rights Conspiracy.

Against Defendants Strong, Strait, Wendle, Rivello and Ellenburger.

179.    Plaintiff incorporate by referrence all of the foregoing paragraphs.

180.   The individual defendants, acting within the scope of their employent and under color of state law, agreed among themselves and with otheer individuals, including Bolton, Beck and Pitsinger to act in concert in order to deprived plaintiff of his clearly established Eighth and Fourteenth Amendment rightss to be free from deprivation of liberty without Due Process of Law and to a fair Grievance Review PREA Investigation, Misconduct Screening and Misconduct Hearing.

181.      In furtherance of the conspiracy, the defendants engaged in and facilitated numerous overt acts, without limitation, the following :

(a)  rufusing to file the 4/4/22 PREA Complaint, sent through the Intra-Net by U/M Ralston.

(b)  suggesting and or fabricating inculpatory evidence in the form of an inmate eyewitness statement(s);

(c)  intentionally or with deliberate indiferrence failing to comply with their constitutional and statutory duty under PREA  to disclose the name and statement of the supposedly eyewitness who defendant Strong interviewed.

(d)  misrepresenting that the PREA Investigation looked at CCTV footage and determined that plainitiff sexual allegtions against defendant Bolton was ***Unfounded*** .

(e)  wrongfully, charged plaintifff with lying to an Employee while knowinng that they lacked probably cause, and

(f)   ignored plaintiff's constitutional right to confront the inmate eyewitness, to present a proponderance of the evidence from the actual CCTV footage of the actual incident during the August 10th, 2022, Misconduct Hearing.

COUNT III. : 42 Pa.C.S., 8343. Defemation / Libel under Pennsylvania State Law.

Against Defendants Pittsinger, Strong, Strait, Wendle, Rivello and Ellenburger.

182.   Plaintiff hereby incorporates by referrence all of the foregoing paragraphs .

183.   Defendants conduct an Intial Review of plaintiff's April 9th, 2022, grievance alleging that defeendant Beckk retaliated against plaintiff, wherein plaintiff supported the claim by referencing multiple inmate eyewitnesses, in conjunction wit CCTV footage - defendant Pittsinger did not review CCTV footage or interviewed those inmates - instead Pittsinger claimed that he spoke with Correctional Food Service Inspector, Cody Everhart about the incident - that Everhart told him that plaintiff account of the incident is not true - However a mere glance or review of the CCTV footage would establish that Everhart is not caputured at or near this incident which accurrd on April 9th, 2022..

184. Defendant Pittsinger in his Initial Review Response "In Part," wrote that ... plaintiff's allegation was not true based on Everhart's eyewitness account ... and issued plaintiff with a copy of his response.

185. However, when plaintiff confronted CFSI verhart about Pittsinger's representation of that incident, Everhart assured plaintiff that he had no such interview with Pittsinger, and that defendant Pittsinger is using him as a scape goat because Pittsinger knew that he would be leaving the food service department and becpming a corrrectional officer,

186.   A copy of defendant Pittsinger's Initial Review response was sent to the facility's grievance coordinator, i.e., to be placed in the Grievance Data Base.  A separate copy was also sent to the facility's Records Room, to be placed into Plaintiff's DC 15 File !

187.   When plaintiff appealed defendant Pittsinger's Initial Review Response to the Superintendent Level, the defendant Rivello accessed the Inmate Grievance System Data Base and reviewed it's copy therein.

188.   The understanding by the Superintendent is that based on a preponderance of evidence, plaintiff is a lier, and ir therefore follows thatm the retaliation did not occurred, which defendant Rivello published.

189.   As a result of its publication, plaintiff's grievance was denied, causing plainntiff specific harm of sorts, etc...

190.   Pittsinger knew of the falsity he published in his Initial Review Response, in doing so, Pittsinger desployed a reckless disregard for the truth, Pittsinger fabricated a lie that he interviewed CFSI Everhart and that Everhart had told him that, plaintiff's account of the incident was not true.

191.   After plaintiff turned down Pittsinger's job offer, for a better kitchen job in exchange for signing off on the retaliation grievance against CFSI Beck, plainntiff subsequently tried to change job assignedment, where infact openings were available in the butcher shop, bakery, but plaintiff was denied without consideration; consequentlly, inmates would then walk into the kitchen on their first day and would be assigned to those skilled jobs plaintiff was qualified for, that is, without being placed on the waiting list .. Upon information and belief, staff did not want to hire

plaintiff in those departments of the kitchen because i was a lier who lied on a fellow staff member.

192. As a result plaintiff experienced mental anguish / suffering.

193. Defendant Pittsinger abuse his privilleged occassion as an appointed grievance officer.

194. These failures of defendant Pittsinger constitute the Tort of Defamation / Libel Tort.

195. With regards to plaintiff's PREA Complainnt docketed at #2022-P-294, and it's finding of being "Unfounded" by defendants Strong's issuance of the August 8th, 2022, misconduct, all defendans except defendant Pittsinger, were malicious.

196. Defendant Strong, Strait, Wendel, Rivello and Ellenburger knew of the falsity of the charge that plaintiff lied to an Employee on May 4th, 2022,'

197. all defendants acted, recklessly disregarded the truth and deliberately indiferrent conduct violated their clearly established duty to act in good faith.

198. Defendant Wendle repeated defendant Strong defematory statement, by virtue of his approval, when defendant Screen tha August 8th, 2022, misconduct and then published it for administrative hearing.

199. Defendant Rivello acquiesced to the approval of defendant Strong's August 8th, 2022 misconduct charging plaintiff with lying to an Employee, is tantaumount to being Libelous.

200. Defendant Ellinberger repeated defendant Strong's defematory statements and published his findings on August 10th, 2022.

COUNT IV :  42 U.S.C. § 1983 Supervisory Liability Claim

### against Defendants strong / Striat, Pittsinger and Rivello

201.    Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein and alleges :

202.    Defendants, including Bolton, Beck Grassmyer, Wendle and Ellenburger, acted with impunity in a climate in which they were not supervised, or disciplined by defendants Strong, / Striat, Pittsinger and Rivello, both in this case as a matter of policy, practice and customs.

203.    Defendants Strong acted reckless and with deliberate indifference to plaintiff's constitutional rights by failinng to adequately staff and monitor CCTV in the facility of the inmate toilet and wash-room in the facility's kitchen, and seperate Bolton from plaintiff, thereby circumventing the PREA Standard and Procedure and causing deprivation of plaintiff's Due Processs and Equal Protect Rights under the Constitution.

204.    Defendant Strong was both personally involved in the plaintiff's PREA allegation against defendant Bolton, and directly supervised the investigative acts taken by her and defendant PREA Investigator Striat.

205.    The reckless and deliberate indifferent conduct of dendants Strong and Striat, violated their clearly  established duty to seperate Bolton from plaintiff, and no reasonable PREA Investigator in 2022, would have believed that reckless and delibarately indifferent supervision in the face of an actual allegation of sexual abuse by facility staff, i.e., in the nature of "Voyeurism" was lawfull.

206.  ·  Defendants Strong and Straits' acts and omissions, as described in the preceeding paragraphs were the direct and proximate cause of plaintiff's injuries.  Upon information and belief, defendants Strong and Strait knew that defendant Bolton was planning to retire in late 2023, said defendants knew or should have known, that their conduct would result in defendant Beck retaliation against plaintiff; that defendant Wendle  and Rivello would approved the false / fabricated misconduct, that defendant Ellenberger would ultimately find that "somnme evidence exist to support a guilty finding and sanctionned plaintiff, i.e., the August 8th, 2022, misconduct..

207.    The reckless and deliberately indifference conduct of defendant Strong and Striat violated their clearly established duty, to report defendant Grassmyer's refusal to initiate the filing of process of plaintiff's April 4th, 2022, Sexual Abuse Claim, and no rewasonable PREA Investigator would have believed that reckless and deliberately indifferent supervision in theface of actual or constructive notice of facility staffs misconduct was lawful.

208.    Defendant Strong and Straits' acts and omissions as describeed in the proceeding paragraphs, were the direct and proximate cause of plaintiff's injuries.Defendant Strong and Strait knew or should have known that their conducts / failures to at would impact plaintiff's credibility and or reliability in being forthcoming andtimely in submitting the PREA Complaint.

209.    Defendants Strong and Strait acquiesced in both Bolton and Grassmyer's actions, i.e., afterr the fact, in violation of plaintiff's constitutional rights.

210.    Defendants Strong recklessly and deliberately indifferent conducts violated her clearly

Ref: 5163439 pg 23 of 66 for BOBBY WILLIAMSON

established duty to report defendant and fellow PREA Investigators Timothy Strait for his failure to docket filed plaintiff's 'DC - 135A Request To Staff Member April 4th, 2022, PREA Complaint, plaintiff sent defendant Strait "specifically." No reasonable PREA Investigator would have believed that reckless and deliberattely indifferent supervision in the face of an actual notice from plaintiff of saind miscunduct by fellow investigator was lawful -

211.    Defendant Strong acts and omissions, as described inthe preceeding paragraphs, were the proximate cause of plaintiff sexual abuse complaint being delayed.  Defendant Strong knew or should have known that her conduct would result in plaintiff credibility would be deminished.

212.    Defendant Pittsinger acted recklessly and with deliberate indifference toplaintiff's constitutional rights by failing to adequately supervised and issued misconduct infractions to his subordinate defendant Beck, thereby an causing this Correction Food Service Inspector to deprived plaintiff of his clearly established constitutional right,including plaintiff's right to be free from retaliation.

213.    Defendant Rivello's reckless and deliberately indifferent conduct violated his clearly established dutty to supervise his subordinates for failure to file plaintiff's timely PREA Complaint, to investigate retaliations that occured during the actual period of the PREA investigation; to reprimand and issue an infraction against Defendant Strong for issuing plaitiff a misconduct for lying to an employee where the evidence of the video footage of the April 4th, 2022, incident clearly shows defendant Bolton depicted looking into the inmates toilet while plintiff was inside urinating. No resonable Superintendent would have believed that reckless and deliberately indifferent supervision in the face of an actual inculpatory evidence of the plaintiff's claims being captured on CCTV footage, of which the PREA investigators themselves monitors and maintain, pursuant to PREA Policy and Standards, was lawful -

214.    Defendant Rivello acts and omissions, as described in the preceeding paragrpahhs, were the proximate cause of plaintiff's injuries.  Defendants knew or should have known that their conducts would result in plaintiff's arbitrary grievance review, wronngful PREA conclusion, issuance of a miconduct; and an unfair misconduct hearing, and and findin of guilt and being sanction accordingly.

COUNT V. :   42 U.S.C. §1983, Deprivation of mental peace withou Due Proess of Law and

denial of a fair grievance Initial Review, by ignoring and fabricating evidence

and deliberately failing to conduct an adequate investigation.

Eighth and Fourteenth Amendments Claims against Pittsinger.

215.    Plaintiff hereby incorporated by reference all of the foregoing paragraphs , as if fully set forth herein.

216.    Defendant Pittsinger acted reckless and with deliberatel indifference to plaintiff's constitutional rigths by failing to conduct a meaningful policy/constitutional investigation and deliberately fabricated a statement by Mr Cody Everhart, which Pittsingerr falsely claimed he obtained in an interview; and withhold from viewing CCTV footage depicting inculpatory and impeachment eveindent against defendant Beck.

217.    Defendant Pittsinger's acts and omissions as described in the preceeding paragraphs, were the direct and proximate cause of plaintiff's injuries, defendant knew,or should have known that his conducts would have resulted in plaintiff' being retaliated / harassed by defendant Beck after her initial retaliation On April 9th, 2022.

218.    Defendant Pittsinger acted with reckless disregards as the whether plaintiff's claims were truthful.

219.    Defendant Pittsinger acted with a high degree of awarness of the probable falsity of defendant Beck's falsee statement, that is, in light of the CCTV footage which defendant Pittsinger defiantly disregarded from his consideration.

COUNT. VI :  Due Process Violation under the Fourteenth Amendment.

Against Deendants Wendle and Rivello.

220.    The averments in the preceding paragraphs are incorporated as if fully setforth herein.

221.    As shift commander and superintendent of the facility, these defendants had a duty under the policy / constitution to screen the misconduct to ensured that it was in accordance with the constituion, as well as DOC policy, statutes and laws -

222.    Defendants Wendle and Rivellos' screening of the August 8th, 2022, misconduct, was prformed in arbitrary manner and not in accordance with the applicable policy and law, where both defendants failed to ascertained the falsity of the defematory communication within the four corners of that misconduct.

223.    A reasonable screening under this circumstance constitutes that both defendants review

plaintiff's April 4th, 2022, PREA Complaint and compared it with the actual corresponding CCTV footages, and Defendant Bolton's statement and the anonymous inmate eyewitness account and policy pursuant to PRE Standards.

224.    Both defendant acted recklessly and deliberately indifferent conducts violated their clearly established duty, to follow the law as it relates to screeening the Misconduct objectively. No shift commander and or superintendent would believed that reckless and deliberately indifferent screening in the face of inculpatory evidence and impeachment evidence, which shows that the PREA investigtors disregarded and overlooked those evidence, in order to brought about a false misconduct against plaintiff, was lawful -

225.    Defendants acts and omissionns, as described in the preceeding paragraphs wre the proximate cause of plainntiff being found guilty at the August 10th, 2022, misconduct hearing.

Ref: 5163439 pg 26 of 66 for BOBBY WILLIAMSON

226.    Defendant Rivello was also directly involved in the administrative appeal oat the second level of both the April 9t, and June 23th, 2022 retaliation grievance appeals, that is, against defendant Beck, as well as directly superviseed the investigative acts of defendant PREA Staff Strong's.    Defendant rivello acted reckless and with deliberate indifference to plaintiff's constitutional rights by failinng to adequately supervisedd the facility's staffs, including monitoring CCTV realtime footages outside and in and around the inmates toilet and the wash-room, located at the facility's kitchen.

227.    Defendant Pittsinger was both personally involed in the investgation of plaintiff's April 9th and June 23rd, 2022, grievances allegations of retaliation against defendant Beck, and directly supervised the food service acts taken by SCI-Huntingdon's Correction Food Service Inspector, including Cody everhart, who is not a defendant in this lawsuit.

228.    The reckless and deliberate indifferent conduct of defendant Pittsinger violated his clearly established duty, to supervise defendant Beck, and no reasonable "Corrections Food Service Manager" in 2022 would have believed that reckless and deliberately indifferent supervision in the face of actual or constructive notice of retaliatory acts by subordinate staff was law.

229.    Defendant Pittsinger's acts and omissions, as described in the preceeding paragraphs, were the direct and proximate cause of of plaintiff's injuries. defendant Pittsinger knew or should have known, that his conduct would result in similar incidents, and his inactions communicated a message of approval, and or has exhibited deliberate indifference to the ongoing plight of plaintiff deprivation.

COUNT  VII : Tort, under Pennsylvania State Law.  Non-Compliance with customs.

Against Defendants Wendle And Rivello.

230.    Plainitiff hereby incorporates by referrence all of the foregoing paragraphs as if fully set forth.

231.    Both defendants owed a Due Process duty of care to plaintiff, to properly sreen the August 8th, 2022, misconduct, charging that plaintiff lied to an employee on May 4th, 2022, to ensured that plaintiff's inculpatory and preponderance of evidence against defendant Bolton weren't being ignored at the expence of plaintiff's right to be free from retaliation for engaging in constitutionally protected conducts, when plaintiff filed the April 4th, 2022, PREA Complaint in question.

232.    As a result of these negligence, plaintiff sustained the injuries and damages setforth above,in that the defendants both failed to ascertained the falsity of the August 8th, 2022, misconduct.

233.    Both defendants allowed the misconduct to be appoved, which then gave the hearing examiner jurisdict to hear the false charges, which was brought on by defendant Strong.  Both defendants accepted the uncorroborated and false statements by defendant Bolton and the inmate whose account of the April 4th, 2022, was used as supporting evidence at the August 10th, 2022, misconduct hearing, in order to established that some evidence exist for the hearing officer,

1

Ref: 5163439 pg 27 of 66 for BOBBY WILLIAMSON

defendant Ellenberger to find plaintiff guilty of the charge.

234.    As a direct result of the negligence of both these defendants, the plaintiff sustained a wrongfully, conviction, 30 day days cell restriction, humiliation and loss of reputation and honor amongst peers, etc !

COUNT IX : Fourteenth Amendment Claim.

Against Defendants Strong and Striat.

235.    Plaintiff incorporates by referrence all of the foregoing paragraphsa as if fully setforth and further alleges that :

236.    The action of PREA Investigators defendants Strong and Strait in using unconstitutional policy, practice and customs in investigating Sexual Abuses, were done maliciously and sadistically and constitutes denial of the plaintiff's due process of law in violation of the Fourteenth Amendment ot the United States Constitution.

237.    As a result of these acts and omissions, plaintiff was injured by the very direct and proximate causes.

2

Ref: 5163439 pg 28 of 66 for BOBBY WILLIAMSON

COUNT VIII: 42 USC §1985(3) Civil Conspiracy, Racial Discrimination & Elderly Abuse.

Against all Defendants.

238.   Plaintiff incorporates by reference all of the preceeding paragraphs, as well as the averments within the Motion for Permission to File Supplemental Pleading and the Supplemental Pleading itself.

239.   The individual defendants, acting within the scope of their employment and under the color of state law, agreed amongst themselves and at relevant times, to act in concert in order to deprive plaintiff of clrealy established 14th, Amendment Rights, to be free from retaliation, malisciouus misconducts, false cell-restriction, causing deprivation without **Due Process of Law**, to a fair grievance review, PREA Investigation and a fair misconduct hearing.

240.   In furtherance of the conspiracy the defendants acted concertly and engaged in and facilitated overt and covert acts, with the intent to deprive plaintiff of equal protection, **due in part to plaintiff being elderly and a black man.**

241.   This conspiracy by these defendants were motivated by discriminatory animus against black people and the eldery plaintiff, **and for purpose of this claim was in fact invidious, in nature.**

242.   Defendants acts and omissions, as described in the preceeding paragraphs, as well as the **Motion for Permission to file Supplemental Pleading and the Supplemental Pleadinng**, were the proximate cause of plaintiff's injuries. Defendants knew or should have known that their conducts would result in plaintiff's PREA Complaint being delayed, plaintiff being retaliated against, denied a fair PREA Investigation, and a fair misconduct hearing.

## *Demand for Relief .*

WHEREFORE, Plaintiff Bobby Kenneth Williamson prays as follows :

A. that the court award compensatory damages to plaintiff against defendants,

jointly and severely in a amount to be determined at trial;

B. that the court award punitive damages to plaintiff, and against all individual

defendants in their individual capacity, in an amount to be determined at trial, that

will deter such conduct by defendants in the future,

C. for a Bench Trial;

D. for pre-judgment and post-judgement interest and recovery of plaintiff's cost,

pursuat to

42 USC §§1983, 1985; 42 USC §§8343, 8550 claims, and

E. for any all other relief to which plaintif may be entitled to .

------------------------------------------------

Bobby K. Williamson # DQ9200, Pro'se
1100 Pike Street
Huntingdon,PA 16654

## *Verification*

I, Bobby Kenneth Williamson, am the plaintiff in the foregoing instrument, hereby verify that its averments are true and correct and understands that they are subjected to penalty of perjury, under 28 U.S.C. §1746.

/s/ ---------------------------------------------------------

*Mr. Bobby K. Williamson, pro se*

*SCI Huntingdon*

*1100 Pike Street*

*Huntingdon, Pa. 16652*

Date : 4/15/24 -------------------------

Ref: 5163439 pg 31 of 66 for BOBBY WILLIAMSON

## Certification of Service

I, Bobby Kenneth Williamson, pro se hereby certify that I am this date serving the foregoing instrument, by depositing one copy othe same in the facility's mail for processing :

### FIRST CLASS ON THE FOLLOWING :

Office of the Attorney General

15th Floor, Strawberry Square

harrisburg, Pa. 17120.

/s/ --------------------------------------------------------

Date : April 12th, 2024.

Ref: 5163439 pg 32 of 66 for BOBBY WILLIAMSON

BA 2040-01 4/7

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania.<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer) B-Blk U/M Ralston | 2. Date: 4/4/22 |
| 3. By: (Print Inmate Name and Number) DQ9200<br>Mr. Bobby K. Williamson<br>B.K. Williamson<br>Inmate Signature | 4. Counselor's Name: Mingle |
| | 5. Unit Manager's Name: Ralston |
| 6. Work Assignment: Kitchen | 7. Housing Assignment: BA 2/40 |

8. Subject: State your request completely but briefly. Give details.

Sir: 42 Pa CSA 4904

I reported to Work Today and during the course of the morning I probably used the Toilet about 5 times... And around 10:25am While I was in the of taking a leak I felt as though someone was behind Me and when I turned around I saw Mr Bolton looking in on Me. I

9. Response: (This Section for Staff Response Only)

asked him What was he doing and that I was using the toilet and he through his hands up and said okay, and walked away. I then went to Mrs Beck to notify her but she told me that she was busy eating.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Copy scanned to PREA LT. For Review 4/6/22

STAFF MEMBER NAME ___Glasser___    _____ DATE 4/6/22
Print                                Signature

**7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips        Attachment 3-A**

Ref: 5163439 pg 33 of 66 for BOBBY WILLIAMSON

# IN THE UNITED STATES DISTRICT COURT FOR

# THE MIDDLE DISTRICT OF PENNSYLVANIA

Bobby Kenneth Williamson,                                  Civil Action #1:22-CV-1965

            Plaintiff


        -Vs-                                              Judge: Hon. Eyvette Kane


Brian Bolton, et al                                        Jury Trial Demanded

-------------------------------------------------------------------------------------------------

### *Supplemental Pleading Pursuant to Fed.R.CIv.P. #15(d)*

## I. Introduction

The United States Congress has enacted **28 CFR §115, et seq.** which is the National Standards to Prevent, Detect and respond to Prison Rape Elimination Act (PREA).

The Pennsylvania Department of Corrections (DOC) has adopted PREA @ **DC-ADM 008** and has zero tolerance policy for sexual abuse or sexual harassment. This means that no sexual abuse or harassment is tolerated, including but not limited to harassment by staff member.

Also zero tolerance means anyone who condones sexual harassment of an inmate shall be subjected to disciplinary action, up to and including termination, and may be criminally prosecuted.

## II. Jurisdiction

Plaintiff is hereby seeking relief for Eighth Amendment violations, as incorporated by the Fourteenth Amendment under **42 USC §1983**, and additional injuries through negligence as permitted under **42 Pa.CS §85229b)(1) and (b)(4)** (waiver of soveriegn immunity for injuries through motor vehicle and real estate).

4a.    This court has original jurisdiction over this pleading pursuant to **28 USC §§§1331, 1343(a) (3) and (4).**

Venue is proper pursuant to **28 USC §1391(b)(2)**, where these eventsgiving rise to these

Ref: 5163439 pg 34 of 66 for BOBBY WILLIAMSON

averments have occurred within the Middle District.

**III. Summary of Relevant and Connwcting Facts**

6.      These proposed Supplemental Facts which are connected or related to the Amended Complaint and summarized in this subsection and state below in more detail, including but not limited to :

a.  Data review for corrective action;

b.  Identiffying problem area;

c.  Taking corrective action on an ongoing basis;

d.  Nebligence by PREA Staff(s) at the facility,

e.   The standards for determining sesual harassment and the customs of the facility manager, defendant in that regard, and

f.  How the plaintiff was treated diferrent than other similarly situated inmates, whom entered the facility's inmate visiting-room, i.e., whether for an attorney conference call in a secure / locked telephone booth, or with outside visitors.

**IV.  Parties**

7.      Plaintiff Mr. Bobby Kennth Williamson, pro se, has been housed at SCI Huntingdon since December 24th, 2020.

8.      Defendants are employees of the Commonwealth of Pennsylvannia who works for Department of Corrections.

9.      All defendant acted under the color of state law in the conducts alleged, i.e, except the facility manager defendant who at all times relevant acted outside the scope of the color of state law.

10.     Each defendant is sued in his or her individual capacity, except the facility manager, who is sued in hiis official capacity as well.

11.     John Rivello is the facility manager for SCI Huntingdon.  He is responsible for the setting of policies at his facility to implement state-wide policies established by the Secretary of Corrections, the conducts of staffs, the safety and control of imates, such as preventing of contraband entering through the Inmate Visiting room. Defendant rivello is sued in his inndividual capacity for violation of constitutional rights.  facility manager rivello is also sued in his official capacity under state law for negligence.

12.     Kelsey Strong is a PREA Staff member at SCI Huntingdon.  She is responsible for but not

Ref: 5163439 pg 35 of 66 for BOBBY WILLIAMSCN

limited to : Monitoring video footages, to protect inmates against sexual abuse / harassments, take into consideration generally accepted correctional practices which rewuires inmates to remove or arrange somme or all clothing, so as to permit a visual inspection of that inmate's buttocks, and or genitalia, in a given circumstance constitutes the contour of staff's Duties.

## V.   Facts

13.   A all times relevant to this Supplemental Pleading, attorney Conference calls for inmates housed at SCI Hntingdon are schedule for, inside a closed and locked sound-proof booth, which is located inthe inmates visiting room, and opposite the visiting room officer's desk.

14.   On January 6th, march 28th, march 31st., April 10th, and June 26th, 2023,plaintiff had a a conference call with attorney Konrad Jarzyna, Esquire.

15.   On each occassion, upon arrival, staff member told plaintiff to remoove all clothing for strip search.

16.   On January 6th, 2023, upon information and belief, SCI Huntingdon's facility manager's lbcal policy dictates that inmates reeiving attorney conference calls aren't subject to strip search, ie., to and from the designated area, 'for contrabands."

17.   On January 6th, 2023, plaintiff informed staff assigned at the visiting room strip search area, of averments 1 through 16 above, and his response was that the facility manager had changed the visiting room policy, now mandating that any and all inmates must get strip search in and out of the visiting room area.

18.   On all mentioned dates above,strip searches conducted by staff was captured on CCTV, which has a link to a central console, and viewed in real time by multiple staffs members throughout the facilityy, and the security department, as well as PREA Staffs.

19.   On said date in averment 14 above, staff members not a defendant to this sue, received plaintiff in the inmate visiting room and escorted plaintiff directly to the telephone booth, where attorney Jarzyna was on the other end of the telephone.  and whenever those conference calls were over with, said staff member unlocked the telephone booth and escorted plaintiff to the area leading to the strip search area, to be strip search again before heading back to plaintiff's unit.

20.   On all five dates mentioned above, staff member, repeated the following search of plaintiff's body:  opening my mouth, exposing the back of my ears, showing the palms and backs of my hands, raising my arms above my head and and exposing my arm pits, lifting my penis, lifting my testicles, turning around and bend over at the waist and spreading my buttocks and hold for viewership

Ref: 5163439 pg 36 of 66 for BOBBY WILLIAMSON

21b.    On or about April 2023, plaintiff filed a PREA Complaint, charging humiliation and other privacy issues, etc - On July 6th 2023, defendant PREA staff Kelsey Strong concluded that plaintiff's allegations are classified as "Official Duties within the scope of DC ADM 008 Prison Rape Elimination Act (PREA) Procedures Manual and that the unclohed search do not meet the standards of sexual harassment or sexual abuse as established by DC-ADM 008 PREA Procedure Manual. On said day defendant Strong logged plaintiff's Complaint within the PREA Tracking System (PTS), however, this was done without assigning a docket number.

### a. Unequal Treatment for inmates who had conferrence calls

### with their attorney.

22.    On or about the second half of January 2023, inmate DeShawn Drumgo, #NC-1640 had an attorney telephone conferrence call and staff #1 did not subject said inmate to a strip search, to and or from his telephone conferrence call(s).

23.    On or about the second half of January 2023, staff #2 did secure and retrieved inmate DeShawn from the telephone booth which is located within the Inmate Visiting Room, at the facility, without conducting a strip search before he wa allowed to return to his unit.

### b. Unequal treatment for inmates who had contact visits

### inside of the inmate visiting room.

24.    On or about July 2023, defendant facility manager John Rivelloo approved for reseearchers from the *Sam Houston state university College of Criminal Justice, Huntsville, Tx. 77341,* to interview inmates at the facility on a voluntary basis -

25.    Subsequently, inmate throughout the facility signed up with the facility manager, defendant John Rivello's Assistant Mrs Andrea Wakefield, and was placed on the call out list for an interview on July 27 and 28th, 2023,

26.    On or about July 27th, and or 28, of 2023, Michael Small, #BW-5325, was placed on the call out list to be interview by said researchers.

27.    Inmate Smalls proceeded to the inmate visiting room and upon his arrival he was ushered through the strip search area by staff #1 and on to the inmates visiting room areaa where reaseacrhers were awaiting to receive him. Inmate Smalls gave the staff member whom at that timme was assigned to the iinmate visiting area his pass and was directed to the researcher who would interview him. The interviewer was located in an enclosd area adjacent to the open area of the visiting room floor.

28.    After the interview was completed Inmate Smalls, retrieved his pass from the visiting room sttaf and returned to his Unit, i.e., without ever being sripped searched.

29.    On July 27th,2023, Inmate Raman Vasquez, GM-9685 was also interviewed by said researchers from Sam Houustonn University and similarly, he was not stripped before and or after the interview. ( Additionally, and relevant here is the fact that Mr. vasquez also when on

Ref: 5163439 pg 37 of 66 for BOBBY WILLIAMSON

"multiple attorney conferrence calls, and each time he went he was stripped searched to and front of officers, staffs #1 and #2, while being video on CCTV, and subsequently subjected to a body scan of the content of his stomach, that is , even though he made absolutely no contact / inter action with the civilian visitor, whom were visiting other inmates in the visiting room.)

30.     Defendant Rivello's Visiting Room Policy is being implemented by visiting room staff and PREA Staff members.

### c. Corrective Process

31.     Defendant Rivello could have but chose no to change the visiting room policy, where inmates including but not limited to plaintiff where video and recorded during strip search in order to receive a telephone call from an attorney, inside of the designated closed, secure and sound proof booth.

32.     All the defendants did not identify that the Inmate Visiting Room is a problem area where plaintiff and or otherr inmates are being targeted with weaponized strip searches.

33.     Defendant Strong knows that whenever inmates received attorney conferrence calls, that there is absolutely no opportunity for plaintiiff and or those inmates to receive contraband.

34.     On Friday March 1st, 2024, plaintiff left the institution for an appointment with an Altoona eye Doctor and upon plaintiff return to the facility , plaintiff was not strip searched, instead, plaintiffff was placed on the body scan machine in the inmate visiting room, strip and search area, conducted by staf #1 and #2.

35.     in a recent correspondence, pursuant to DC-135A, between inmate Ramam Vasquez, # MG-9685 and defendant Rivello went as follows :

'Mr Rivello,

February 22, 2024, I went for a legal telconferrencce, I was strip searched to and from the visit before 2 CO's, infront of the security camara that was mounted on the wall. Then made to be screened in the body scan machine after dressing. I'd like to ask you what penological inteest is gained by having me strip searched infront of the security camera if I had no civilian cantact ??? Please let me know ... Thank you.

Response;

**You were <u>not</u> strip searched on video.**

*/s/  J. Rivello.    Date 3/21/24*

Ret: 5163439 pg 38 of 66 for BOBBY WILLIAMSON

COUNT I. : Violation of Equal Protection Clause of the United States Constitution.

Against defendant Rivello.

36.    Plaintiff incorporate by reference all of the foregoing paragraphs as if fully setforth herein.

37.    Defendant Rivello's acting as policy maker of the facility instituted a policy, customs and practice by his staffs, namely staff # 1 Staff # 2, herein above, causing plaintiff's rights under the Eighth and Fourteenth Amendment to be violated, where those officer assaulted plaintiff, by virtue of the mere continual strip searchs.

38.    Defendant Rivello's policy, practice and costums to search plaintiff before and after receiving a conferrence call with an attorney, that is, inside of a secure telephone booth, and where plainntiff did not have any contact or opprotunity to make contact with other inmates and or their ouutside visitors and obtain contrabands, defendant Rivello policy, practice and or costums is void of any penological interest.

39.    The recklecc and deliberate indifferent conduct ofdefendant Rivello, violated his clearly established durty of care, in terms of *zero tolerance of sexual abuse and haassments*.

40.    As a result of defendant Rivello acts and omissions, as described in the preceeding paragraphs, were the proximate cause of plaintiff's humiliation, and being visually assaulted, and harassed by Staffs #1 and #2..

41.    Defendant Rivello knew and or should have known that, his promulgation of discriminatory policy, practice and customs, as it relates to inmates visiting-room *"rules,"* when receiving an attorney conferrence call, within the inmate visiting-room, would result in inmates / plaintiff being sexually assaulted "visually," and humiliated by the experience. No reasonable superintendent would believe that promulgating such an arbitrary policy, practice and custom would advance any penological interest, or stemmed, or mitigate the apportunity to breach the facility's security with contradands.

Ref: 5163439 pg 39 of 66 for BOBBY WILLIAMSON

COUNT II :   Violation Due Proces, under the 14th, Amendment of the U.S. Constitution.

Against defendant Strong.

42.    Plaintiff incorporates by referrence all the preceeding paragraphs as if fully setforth hieerin.

42.    Defendant Strong acted with reckless and deliberate indifferent conduct violted her duty to process plaintiff PREA complaint, that is, by first assinging a docket number and investigate plaintiff allegations, in accordance with PREA Standards.

43.    Defendant Strong acts and omissions, as descried in the preceeding paragraphs were the proximate cause of plaintiff.  Especially where PREA Staffs, namely Strong was minitoring the video footage of those assaults / harassments during the relevant period, and defendant Srong chosed not to prevent and or intervene in the matter by stopping staff #1 and #2, and or suggest to facility manager defendant Rivello, that his policy, practice and custom of searching plaintiff and other inmates going to and from attorney conferrence calls are in fact an assault and humiliation, in violation of the *zero tolerance policy of the PREA Standards,* which the facility is supposed to be implimenting in the first place.

44.    Defendant Strong acts and omissions, as described in the preceeding paragraphs were the proximate cause of plaintiff being assauled visually and humiliated several times.

Ref: 5163439 pg 40 of 6b for BOBBY WILLIAMSON

COUNT III: 42 USC §1985(3) Civil Conspiracy, Racial Discrimination & Elderly Abuse.

Against all Defendants.

45.    Plaintiff incorporates by reference all of the preceeding paragraphs, as well as the averments within the Supplemental Pleading itself.

46.    The individual defendants, acting within the scope of their employment and under the color of state law, agreed amongst themselves and at relevant times, to act in concert in order to deprive plaintiff of clrealy established 14th, Amendment Rights, to be free from retaliation, malisciouus misconducts, false cell-restriction, causing deprivation without **Due Process of Law**, to a fair grievance review, PREA Investigation and a fair misconduct hearing.

47.    In furtherance of the conspiracy the defendants acted concertly and engaged in and facilitated overt and covert acts, with the intent to deprive plaintiff of equal protection, **due in part to plaintiff being elderly and a black man.**

48.    This conspiracy by these defendants were motivated by discriminatory animus against black people and the eldery plaintiff, **and for purpose of this claim was in fact invidious, in nature.**

49.    Defendants acts and omissions, as described in the preceeding paragraphs, as well as **Supplemental Pleading and the Supplemental Pleadinng**, were the proximate cause of plaintiff's injuries. Defendants knew or should have known that their conducts would result in plaintiff's PREA Complaint being delayed, plaintiff being retaliated against, denied a fair PREA Investigation, and a fair misconduct hearing.

## *Verification*

I, Bobby Kenneth Williamson, am the plaintiff in the foregoing instrument, hereby verify that its averments are true and correct and understands that they are subjected to penalty of perjury, under 28 U.S.C. §1746.

/s/ ----------------------------------------

*Mr. Bobby K. Williamson, pro se*

*SCI Huntingdon*

*1100 Pike Street*

*Huntingdon, Pa. 16652*

Date : 4/12/24

Ref: 5163439 pg 42 of 66 for BOBBY WILLIAMSON

## Certification of Service

I, Bobby Kenneth Williamson, pro se hereby certify that I am this date serving the foregoing instrument, by depositing one copy othe same in the facility's mail for processing :

### FIRST CLASS ON THE FOLLOWING :

Office of the Attorney General

15th Floor, Strawberry Square

harrisburg, Pa. 17120.

/s/ --------------------------------------------------

Date : April 12th, 2024.

Ref: 5163439 pg 43 of 66 for BOBBY WILLIAMSON

Re: Williamson vs Bolton, et al

Civil No. 1:22-cv-1965

Bobby Kenneth Williamson, Reg. No. DQ-9200
SCI-Huntingdon
**SPECIAL MAIL-OPEN ONLY IN PRESENCE OF INMATE**
1100 Pike Street
Huntingdon, PA 16652

Dear Judge Kane:

On 4/16/24, I gave the facility my Amended Complaint, and it was mailed to this Court on 4/17/24. However, on 5/8/24, @ about 2:30 pm, My Amended Complaint, Permission to File Supplemental Pleading $ A Supplemental Pleading returned, "Return To Sender, Unclaimed, Unable To Forward." Find enclosed Said Pleadings, Cash Slip Reciept, Monthly Statement. Please accept This filing as timely. A Copy Of the U.S. Postage Meter Stamp Will follow this Correspondence.

Mark S

5/8/24 @5:10 Pm

Smart Communications/PADOC
SCI – Huntingdon
Mr. Bobby K. Williamson, # DQ9200
P.O. Box 33028
St. Petersburg, FL 33733

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS



US POSTAGE
$008.20⁰
0000372161MAY 09 2024

RECEIVED
HARRISBURG, PA

MAY 14 2024

PER _____
DEPUTY CLERK

To: Office Of The Clerk
United States District Court
Sylvia H. Rambo, U.S. Courthouse
1501 North 6ᵗʰ Street, Suite 101
Harrisburg, Pa 17102



PRIORITY
★ MAIL ★

TRACKED
★★★
INSURED

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use    Label 107R, May 2014



UNITED STATES
POSTAL SERVICE®

USPS TRACKING #

9114 9022 0078 9439 6911 32