**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOBBY K. WILLIAMSON,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-01965** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 in which pro se Plaintiff Bobby K. Williamson ("Williamson") alleges violations of his civil rights arising from an incident in which one of the Defendants allegedly peered at him while he was using the bathroom.  Following the Court's dismissal of Williamson's original complaint without prejudice, the case is currently proceeding on Williamson's amended complaint.  Pursuant to the Prison Litigation Reform Act ("PLRA"),[1] the Court now performs its mandatory screening of Williamson's amended complaint.  For the reasons set forth below, the Court will dismiss the amended complaint without further leave to amend and close this case.

## I.     BACKGROUND

Williamson filed the complaint that initiated this case on December 13, 2022.  (Doc. No. 1.)  Defendants moved to dismiss the complaint on March 13, 2023.  (Doc. No. 14.)  On January 30, 2024, the Court granted the motion, dismissed Williamson's due process claims and claims against the Pennsylvania Department of Corrections ("DOC") and the Bureau of Investigation and Intelligence ("BII") without further leave to amend, dismissed the complaint without

---

[1]  <u>See</u> The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

prejudice in all other respects, and granted Williamson leave to file an amended complaint. (Doc. Nos. 28–29.)  Williamson filed his amended complaint on May 14, 2024.  (Doc. No. 36.)

According to the allegations in the amended complaint, Williamson, an inmate in Huntingdon State Correctional Institution ("SCI-Huntingdon"), was employed in the prison's kitchen on April 4, 2022 as a janitor, when he was taking a break from his shift to use the bathroom.  (Id. at 3.)  While he was using the bathroom, Defendant Bolton, a food services supervisor, allegedly "peer[ed]" in at Williamson.  (Id.)  Williamson immediately told Bolton that he was using the toilet, and Bolton allegedly responded, "okay, okay," and left the room. (Id.)  Williamson called out to see if anybody else was in the area.  (Id. at 4.)  The only person he saw was another inmate named Haywood Barber ("Barber"), who was washing out either a mop bucket or a trash bin.  (Id.)  Williamson and Barber made eye contact with each other.  (Id.)

After leaving the bathroom, Williamson attempted to report Bolton's conduct to Defendant Beck, another food services supervisor.  (Id.)  Beck allegedly refused to listen to Williamson because she was eating a meal.  (Id.)  Beck then purportedly declined to "follow up" with Williamson after finishing her meal to find out what he was trying to report.  (Id. at 8.)

Later that day, Williamson allegedly reported Bolton's conduct to Defendant Grassmyer ("Grassmyer"), a lieutenant in the prison, while Grassmyer was making rounds outside of Williamson's cell.  (Id. at 4.)  Williamson purportedly gave Grassmyer a form that he had prepared to file a complaint pursuant to the Prison Rape Elimination Act ("PREA").  (Id.) Grassmyer advised Williamson to submit the PREA complaint to Defendant Strong ("Strong") because Strong was responsible for dealing with PREA complaints.  (Id.)  Williamson filed his PREA complaint on the same day.  (Id. at 4.)  On April 5, 2022, Williamson returned to work in the kitchen with Defendant Bolton and continued to work with Bolton until approximately

August 10, 2022.  (Id.)  Strong subsequently failed to file the PREA complaint on Williamson's behalf and failed to separate Williamson and Bolton.  (Id. at 5.)

The complaint alleges that shortly after the incident involving Bolton, on April 9, 2022, Williamson was working in the prison's kitchen when Defendant Beck allegedly told another inmate to "take a break for the day," and told Williamson to "[g]et on the line and work."  (Id.) Williamson filed a grievance against Beck, alleging that her actions were retaliation for his complaint against Bolton.  (Id. at 5.)  The grievance was subsequently denied by Defendant Pittsinger, based on Pittsinger's interview with Williamson and other witnesses and his review of relevant video footage.  (Id. at 14.)

In the last week of April 2022, Williamson wrote a letter to the BII, asking for the BII's intervention to stop the delays in processing his PREA complaint against Bolton.  (Id. at 5.)  The BII purportedly responded that a PREA complaint had not been filed, that the BII had informed relevant staff of the delay, and that staff would likely interview Williamson soon.  (Id.) Williamson resent the PREA complaint to Strait shortly thereafter.  (Id.)  On May 4, 2022, Williamson was interviewed by Defendants Strong and Strait, SCI-Huntingdon's PREA compliance manager.  (Id.)  During this interview, Strong and Strait stated that they had not received Williamson's PREA complaint until he had resent it to Strait in late April.  (Id.)

On June 23, 2022, Williamson was working in the kitchen when about thirty (30) inmates were socializing and playing cards.  (Id. at 5–6.)  Around this time, several carts containing dirty food trays were returned to the kitchen.  (Id.)  Beck allegedly told the group of inmates that she needed them to "bang out the dirty trays"—in other words, to clean them up.  (Id.)  The group of inmates purportedly responded, "Fuck you bitch, we gonna bang you out bitch."  (Id.)  Everyone in the area, including Beck, purportedly laughed at this comment.  (Id.)  Williamson then got up

and returned to his janitorial duties, at which point Beck "holler[ed]" at him to clean up the trays. (Id.)  Williamson's supervisor purportedly told him, within earshot of Beck, that he did not have to do this because it was not part of his normal job duties.  (Id.)  Beck stated, "he can still help to bang out the trays."  (Id.)  But Williamson's supervisor allegedly refused to have him do this. (Id.)  Williamson filed a grievance against Beck for this incident.  (Id.)

Sometime in early August 2022, Strong and Grassmyer issued Williamson a written decision finding that his PREA complaint was unfounded and stating that he was going to be charged with misconduct for lying about the complaint.  (Id. at 6–7.)  The written decision did not specify any witnesses who observed the interaction between Williamson or Bolton, nor did it state which individuals were interviewed for the PREA investigation.  (Id. at 7.)

Williamson was charged with misconduct on August 8, 2022.  (Id.)  The misconduct charge was referred to Defendant Ellenberger for purposes of conducting a disciplinary hearing on August 10, 2022.  (Id. at 8.)  Ellenberger noted that upon viewing the relevant video footage, he concluded that although Bolton had looked into the bathroom when Williamson was in there, he had not "engaged in voyeurism."  (Id.)  Prison officials investigating the PREA complaint additionally considered a statement from an inmate witness who stated that Bolton had not done or said anything improper during his interaction with Williamson in the bathroom and a written statement from Bolton to the same effect.  (Id. at 11.)  Prison officials did not inform Williamson whether Barber was the inmate who purportedly witnessed the event.  (Id.)  Ellenberger found Williamson guilty of the misconduct charge and sentenced him to thirty (30) days cell restriction and loss of his prison job.  (Id. at 8.)  The amended complaint additionally alleges various facts regarding PREA complaints filed by other inmates in SCI-Huntingdon, none of which are factually connected to Williamson's PREA complaint.  See (id. at 11–14).

4

The amended complaint asserts the following claims for relief: (1) state law tort claims for assault, battery, and intentional infliction of emotional distress against Bolton; (2) cruel and unusual punishment in violation of the Eighth Amendment against Bolton; (3) conspiracy to violate civil rights under 42 U.S.C. § 1985 against all Defendants; (4) state law tort claims for defamation and libel against Defendants Pittsinger, Strong, Strait, Wendle, Rivello, and Ellenberger; (5) supervisory liability against Defendants Strong, Strait, Pittsinger, and Rivello; (6) violation of Williamson's due process rights under the Fourteenth Amendment against Defendant Pittsinger, Wendle, Rivello, Strong, and Strait; and (7) a state law tort claim for "non-compliance with customs" against Defendants Wendle and Rivello, which appears to be properly construed as a negligence claim.  (Id. at 17–27.)  The Court additionally liberally construes the amended complaint as asserting a retaliatory misconduct charge against the individuals who brought and pursued misconduct charges against him and a retaliation claim against Beck.[2]  Williamson seeks compensatory and punitive damages.  (Id. at 28.)

## II.  LEGAL STANDARDS

### A.  Screening Standard

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id.

---

[2]  These claims were asserted in the original complaint but are not explicitly asserted in the amended complaint.

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations,

viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

**B.**     **Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

### A.    Due Process

As a threshold matter, the Court will dismiss Williamson's due process claims without any further discussion because the Court did not grant Williamson leave to amend these claims when it previously dismissed them.  See (Doc. No. 28 at 10–11; Doc. No. 29 at 1).  As the Court previously noted, the sanctions imposed on Williamson during the disciplinary proceedings related to the events of this case—thirty days of cell restriction and the loss of his prison job—do not trigger due process protections.  See (Doc. No. 28 at 10–11).  The due process claims will accordingly be dismissed from the amended complaint.

### B.    State Law Tort Claims

Williamson's state law tort claims will be dismissed because defendants are entitled to sovereign immunity from the claims.  Pennsylvania law provides that Commonwealth employees acting within the scope of their employment are entitled to sovereign immunity from most state law claims.  See 1 Pa.C.S. § 2310.  With ten limited exceptions, see 42 Pa.C.S. § 8522, Commonwealth employees retain their sovereign immunity with respect to both intentional tort

8

and negligence claims.  See Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010)

(citing Holt v. Nw. Pa. Training P'Ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Commw. Ct.

1997)).  None of the ten exceptions to sovereign immunity apply in the instant case, and it is

clear from the allegations in the complaint that the defendants were acting within the scope of

their employment when they took the allegedly tortious actions.  The tort claims will accordingly

be dismissed on the basis of sovereign immunity.

### C.     Cruel and Unusual Punishment

The Court will additionally dismiss Williamson's cruel and unusual punishment claim

against Defendant Bolton.  The gravamen of this claim is that Bolton violated Williamson's

constitutional right to be free from cruel and unusual punishment by looking at Williamson while

he was using the bathroom.  This claim fails as a matter of law.  Allegations that a prison official

has looked at an inmate's naked body unaccompanied by any other allegations of sexual

harassment or sexual contact are not sufficiently serious to violate the Eighth Amendment.  See

Kokinda v. Pa. Dep't of Corrs., 779 F. App'x 944, 950 (3d Cir. 2019) (unpublished) (holding

that prison official defendant's "alleged actions of non-verbal, non-physical staring on several

occasions were not sufficiently intolerable and cruel, and capable of causing harm such that [the

plaintiff] could satisfy the objective component of his [Eighth Amendment] claim").

### D.     Conspiracy

The Court will next consider Williamson's claim that Defendants conspired to violate his

civils rights pursuant to 42 U.S.C. § 1985(3), which allows a civil claim "[i]f two or more

persons in any State or Territory conspire . . . for the purpose of depriving, either directly or

indirectly, any person or class of persons of the equal protection of the laws, or of equal

privileges and immunities under the laws."  To state a claim for conspiracy under Section

1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." See Davis v. Wigen, 82 F.4th 204, 214 (3d Cir. 2023) (quoting United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828–29 (1983)).  "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."  Scott, 463 U.S. at 835 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

In this case, Williamson alleges that Defendants engaged in a conspiracy to violate his right to equal protection based on his race and his age.  The Court will dismiss this claim because Williamson has not cured the pleading defects previously identified by the Court.  As the Court previously noted, Williamson has not alleged any facts to show that the purported conspiracy by Defendants was based on Williamson's race, age, or any other class-based reason.  See Scott, 463 U.S. at 835.  Accordingly, the Court will dismiss the conspiracy claim for failure to state a claim upon which relief may be granted.

**E.    Retaliation Claims**

The Court will next analyze the retaliatory misconduct and retaliation claims.  To state a retaliation claim upon which relief may be granted, a plaintiff must allege (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3)

there was a causal connection between the protected conduct and the retaliatory action.  See

Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  When a plaintiff asserts a claim of

retaliation based on defendants bringing allegedly retaliatory misconduct charges against the

plaintiff, the claim fails if there was "some evidence" to support the underlying misconduct

charge.  See, e.g., Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (holding that retaliatory

misconduct charge failed because there was a quantum of evidence indicating that prisoner

plaintiff committed underlying misconduct, and the decision to sanction him for misconduct was

therefore based on a legitimate penological interest); Nifas v. Beard, 374 F. App'x 241, 244 (3d

Cir. 2010) (unpublished) (holding that retaliatory misconduct claim fails when there is some

evidence to support the misconduct charge).

      The Court will dismiss the retaliatory misconduct and retaliation claims because

Williamson has not cured the pleading defects that were present in his original complaint.

Specifically, the retaliatory misconduct claim fails because the accounts of Bolton and the other

inmate represent "some evidence" to support the charge that Williamson lied when he asserted

that Bolton "peered" at him while he was using the bathroom.  See Carter, 292 F.3d at 159;

Nifas, 374 F. App'x at 244; see also Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S.

445, 455–56 (1985) (holding that "some evidence" standard in prison disciplinary proceedings

"does not require examination of the entire record, independent assessment of the credibility of

witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the disciplinary board").

      As for the retaliation claim, Beck's alleged actions of ordering Williamson to serve food

on one occasion and clean out food trays on another occasion are simply not serious enough to

deter a person of ordinary firmness from exercising his constitutional rights.  Williamson was

employed in the kitchen at all relevant times, and it appears from the complaint that these tasks were a very minor deviation from his normal job duties. These de minimis changes to the conditions of his employment are not sufficient to support a retaliation claim upon which relief may be granted. Accordingly, the Court will dismiss Williamson's retaliation claims for failure to state a claim upon which relief may be granted.

### F.     Supervisory Liability

Having determined that all of Williamson's other claims fail to state a claim upon which relief may be granted, the Court will dismiss his supervisory liability claim. The supervisory Defendants cannot be held liable for failing to intervene to stop actions that did not themselves violate Williamson's rights.

### G.     Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court will deny further leave to amend as futile. Williamson has had multiple opportunities to state a claim upon which relief may be granted but has failed to do so. See id. (noting that leave to amend may be denied for "repeated failure to cure deficiencies by amendments previously allowed").

**IV.    CONCLUSION**

For the foregoing reasons, the Court will dismiss Williamson's amended complaint without further leave to amend and close this case.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania